Anastacio Z. VASQUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–99–0338–CR.

Court of Appeals of Texas, Amarillo.

May 11, 2000.

---

**30**

Ronald Emmett Harris, Uvalde, for appellant.

Mark Yarbrough, Crim. Dist. Atty., Littlefield, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

BRIAN QUINN, Justice.

Anastacio Z. Vasquez (appellant) appeals from a final judgment under which he was convicted of murder. His sole issue on appeal concerns whether the trial court erred in denying his motion to dismiss and plea in bar. Allegedly, dismissal was required because further prosecution violated the double jeopardy and due process clauses of the Texas Constitution. We affirm.

### Background

The State indicted appellant for the murder of Larry Purdy in 1994. The first attempt to try him (in June of 1995) ended with a mistrial. Appellant had moved for mistrial after the discovery of what was thought at the time to be the murder weapon. It appears that both the State and appellant wanted an opportunity to test the weapon to determine whether their belief was correct.

In March of 1996, the matter was again set for trial, which proceeding also resulted in a mistrial. Appellant again moved for mistrial contending that the proceeding was unduly tainted when the trial judge engaged in an *ex parte* conversation with the prosecutor after the trial was recessed for the day. Earlier, the litigants had discussed in open court the potential admission into evidence of statements by various inmates. According to the judge, the parties opted "by agreement" to forego discussion regarding "foundation issues"

encompassing the testimony. This later caused the judge concern about "whether or not [a] foundation could be laid for [the] witnesses [sic]" testimony. In an effort to avoid wasting time and "drag[ging] anything out before the jury that we didn't have the foundation to prove up," the judge decided to talk with the prosecutor. Though appellant and his counsel had left the courthouse by then, the judge encountered counsel for a co-defendant and told him of his concern and his intention to mention same to the prosecutor. Counsel for the co-defendant "said that was fine" and "go ahead."

The prosecutor had various family members of the decedent in his office when he saw the judge coming. Thus, he excused himself to meet the judge. When the two met, the judge told the prosecutor to " '[m]ake sure you can lay a foundation for your witnesses before we waste a lot of time arguing about statements in the morning.' " The State responded with something akin to " 'I know,' or '[o]kay,' or '[w]hatever'." Nothing was said about the mechanics of establishing the appropriate foundation, nor did the conversation last more than 10 to 15 seconds.

When appellant learned of the brief interaction, he moved for mistrial, as did counsel for the co-defendant. The latter contended that the circumstance "smell[ed] of impropriety." Though the motion was initially denied, the trial court later relented and granted it.

Several months later, appellant moved to dismiss the indictment and contended that double jeopardy barred further prosecution. The trial judge assigned to hear the motion first received evidence from both the prosecutor and the judge and then denied the request. Subsequently, a third trial was convened which resulted in appellant's conviction.

### Issue

As previously mentioned, appellant asserts that continuation of the trial violated both the double jeopardy and due course of law provisions in the Texas Constitution. We disagree and overrule the contention.

### a. Due Course of Law

■ Though appellant mentions due course of law in his brief, he does so in a rather conclusory and speculative way. For instance, he neither cites authority to support his contention nor concludes that due process was denied him. Indeed, he merely talks of hypothetical possibilities if certain circumstances had occurred and then suggests that "[t]o further subject him to a third trial not only violated the double jeopardy clause, but also further and *potentially* deprived him of his liberty, property, privileges and/or immunities without due course of law...." (Emphasis supplied). Given the conclusory and speculative nature of the argument and lack of citation to authority, we conclude that appellant failed to adequately brief the matter and, consequently, waived the contention. TEX.R.APP. P. 38.1 (h) (requiring an appellant to provide concise argument, and authority in support thereof, in his brief); *In re Williams*, 998 S.W.2d 724, 730 (Tex.App.—Amarillo 1999, no writ) (holding that the failure to comply with Rule 38.1(h) results in waiver of the issue).

### b. Double Jeopardy

#### 1. Applicable Law

■ We review a court's decision to reject a claim of double jeopardy under the standard of abused discretion. *Ex parte Pitluk*, 940 S.W.2d 220, 221 (Tex.App.—San Antonio 1997, no pet.); *Ex parte Zavala*, 900 S.W.2d 867, 870 (Tex.App.—Corpus Christi 1995, no pet.). In other words, the decision must fall outside the "zone of reasonable disagreement." *Benitez v. State*, 5 S.W.3d 915, 918 (Tex.App.—Amarillo 1999, pet. ref'd.). Moreover, in determining if it did, we consider issues of law *de novo*. *State v. Clemmer*, 999 S.W.2d 903, 905 (Tex.App.—Amarillo 1999, pet. ref'd.). However, when issues of fact underlying the decision were disputed or the resolution of those issues depended upon

consideration of the credibility and demeanor of witnesses, we must defer to the manner in which the trial court resolved those issues and applied the facts to the law involved. *Id.* Finally, when we are required to so defer to the trial court, authority also compels us to 1) presume that the lower court entered those findings necessary to support its decision, and 2) view the evidence in the light most favorable to that decision. *Id.*

■■ Next, article I, § 14 of the Texas Constitution states that no person shall be twice put in jeopardy for the same offense after a verdict of not guilty. This provision has been construed as not prohibiting retrial of an accused after mistrial if the accused requested the mistrial. *Bauder v. State,* 921 S.W.2d 696, 698 (Tex.Crim.App. 1996). But, with all rules, there are exceptions. The one pertinent here concerns whether the accused sought mistrial on his own volition or because he was compelled to do so given the conduct of the State and court. The applicable test is enunciated in *Bauder.*

In *Bauder,* the Court of Criminal Appeals held that a successive prosecution is barred if the prosecutor committed an objectionable act with the intent to induce a mistrial or if he did it while being aware of the risk that it would require a mistrial but nonetheless consciously disregarded that risk. *Bauder v. State,* 921 S.W.2d at 699. Under either circumstance, the defendant is not seeking a mistrial merely to avoid the exigencies of a trial or the consequences of events outside the prosecutor's control. *Id.* Rather, his conduct emanates from conditions produced by his opponent which render the trial incurably unfair. *Id.* Consequently, the decision to seek mistrial in those circumstances is not volitional but compelled by the utter and incurably unfair nature of the proceeding. *Ex parte Bauder,* 974 S.W.2d 729, 732 (Tex. Crim.App.1998).

■ Next, in applying *Bauder,* the *mens rea* under which the prosecutor acted is pivotal. It is not enough that the incurable condition he created arose from "simple negligence" or "sloppiness." *Ex parte Davis,* 957 S.W.2d 9, 13 (Tex.Crim. App.1997) *cert. denied,* 523 U.S. 1023, 118 S.Ct. 1307, 140 L.Ed.2d 472 (1998). Instead, the actor must have created it while intending that his actions result in mistrial or while actually knowing of that likelihood but nonetheless consciously ignoring it.[1]

■ Next, while *Bauder* dealt with prosecutorial misconduct we see little reason why the same rule should not apply to judicial misconduct. Historically, the

---

1. As an aside, we note that whether the trial court erred in granting the mistrial is apparently not a consideration. This is illustrated by *Bauder II* wherein the Court of Criminal Appeals reversed the San Antonio Court of Appeals for initially determining whether the mistrial could have been legitimately denied. *Ex parte Bauder,* 974 S.W.2d 729, 731–32 (Tex.Crim.App.1998). (*Bauder II*) In other words, the San Antonio appellate court thought that *Bauder I (Bauder v. State, 921 S.W.2d 696 (Tex.Crim.App.1996))* obligated it to assess whether the objectionable circumstances which resulted in mistrial were truly of the type which rendered the proceeding incurably unfair. *Bauder v. State,* 936 S.W.2d 19, 20 (Tex.App.-San Antonio 1998) *reversed* 974 S.W.2d 729 (Tex.Crim.App.1998). However, the Court of Criminal Appeals held that "the correctness of the ruling granting mistrial" was not the question. *Ex parte Bauder,* 974 S.W.2d at 731. Instead, it must be decided whether the accused "truly consented to the mistrial." *Id.* at 731–32. And, whether he truly consented depended upon whether the motion was simply a choice he made in response to ordinary reversible error to avoid conviction, appeal, reversal and retrial or was required due to the prosecutor's deliberate or reckless conduct "that rendered the trial incurably unfair." *Id.* at 732. Thus, in directing the San Antonio Court to forego assessing the validity of the mistrial, we construe *Bauder II* as requiring us to simply focus on the *mens rea* of the prosecutor. Yet, this standard leaves us to wonder what the result would be if the prosecutor did something intentionally or recklessly which then caused the court to grant a mistrial, but the act in question was actually curable error or not error at all. Under *Bauder II* we would most likely have to sustain the appellant's claim of double jeopardy even though the trial court was mistaken in granting mistrial.

judge's *mens rea,* like that of the prosecutor, has been perused in determining whether the mistrial resurrected a bar to further prosecution. *Ex parte Loffland,* 670 S.W.2d 390, 394 (Tex.App.—Fort Worth 1984, pet. ref'd). In *Loffland,* the court addressed whether the judge intended to provoke the mistrial or acted in bad faith or with gross negligence. *Id.* So, given that the *mens rea* of the judge was the primary consideration before *Bauder,* there is no reason to change that focus post-*Bauder.* Accordingly, we hold that further prosecution is barred by double jeopardy when a judge commits incurable error and does so with the intent to cause a mistrial or with knowledge that a mistrial is likely but nonetheless consciously disregards that likelihood.

### 2. Application of Law

■ Construing the record in a light most favorable to the court's decision, we find evidence of record illustrating that the court approached the State. That evidence, however, indicates that the judge did so to voice his concern about tainting the jury with improper evidence. Again, the parties had agreed not to discuss the "foundation" of the statements to be tendered into evidence. Yet, the trial judge felt obliged to prevent the jury from considering statements that lacked "the foundation to prove [them] up." Furthermore, at least one of the defense counsel not only was informed of the court's intention to broach the matter with the State, but also was invited to attend. In response, that counsel not only failed to voice objection but also told the judge to "go ahead." During the ensuing discussion, which lasted mere seconds, the court expressed its concern about tainting the jurors with inadmissible evidence, which concern the State acknowledged. This is hardly indicative of a conspiracy to convict in which appellant contends that the prosecutor and the court engaged. Nor is it indicative of a *mens rea* intent on causing a mistrial or on performing an act while knowing that the act could result in mistrial but nonetheless proceeding.

Similarly, nothing appears of record illustrating that either the court or the State was aware of the chance that their conduct was objectionable under the law or to others. Nor is there evidence of record suggesting that either participant in the conversation was aware of the chance that their conduct risked mistrial and, with that awareness, they nonetheless engaged in the discourse. Again, the co-defendant's counsel who was present was invited to attend but instead declined and told the court "go ahead". Moreover, we are cited to no authority by appellant holding that the interaction amounted to error; he simply concluded as much.

From the foregoing, one could have reasonably deduced that neither the State nor the judge acted with the intent to cause a mistrial or knew of any risk that a mistrial would result from their conduct and disregarded that risk. Accordingly, we hold that the trial court did not abuse its discretion by denying appellant's motion to dismiss and affirm the judgment.