In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00165-CR


______________________________




GRANT WILLIAM BARNETT, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Criminal Court at Law No. 5


Harris County, Texas


Trial Court No. 1046797




 






Before Grant, Ross, and Cornelius,* JJ.

Opinion by Justice Grant



______________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


O P I N I O N



 Grant William Barnett appeals his conviction for possession of less than two ounces of
marihuana, with a sentence of thirty days in the Harris County Jail, suspension of his driver's license
for one year, and court costs. In his sole issue on appeal, Barnett contends that his second trial for
the offense charged was barred by double jeopardy because a mistrial was declared in the first trial
due to intentional or reckless conduct by the prosecutor. 

Procedural History/Statement of Facts

 Before trial, Barnett's counsel filed a Motion to Suppress Evidence, alleging Barnett was
searched in violation of Chapter 14 of the Code of Criminal Procedure, and in accord with
Section 38.23 of the Code, evidence seized from such search should be suppressed. Tex. Code
Crim. Proc. Ann. art. 14.01, et seq. (Vernon 1977 & Supp. 2002), art. 38.23 (Vernon Supp. 2002). 
Harris County Deputy Sheriff Dean Allred was the State's first witness at the suppression hearing. 
Allred testified he observed a vehicle with a taillight out traveling in the 11900 block of Jones Road
in northwest Harris County. He followed the vehicle and stopped it, pulling into a Wells-Fargo Bank
parking lot in the 12300 block of Jones Road. He testified that when he approached the vehicle, he
smelled a strong odor of marihuana coming from the inside. He identified the driver as Barnett. 
Allred also observed "rolling papers" on the back floor of the vehicle, which are commonly used to
roll marihuana cigarettes. After being given permission to search the vehicle, Allred testified he
found a glass jar under the driver's seat which contained marihuana. He also located an eyeglass
container, which contained a bag of marihuana, and another smaller bag containing an unknown
substance. On redirect examination, Allred further stated he also found a compact disk (CD) case
in the car, which contained an unknown substance in a small plastic bag. The trial court denied the
motion. 

 In the first trial on the merits (labeled in the reporter's record as "Mistrial"), defense counsel
filed a trial motion in limine regarding a Rule 404 notice received less than ten days before trial. The
notice stated that the unknown substance found in the CD case at the traffic stop and recovered by
police was a controlled substance, namely, mushrooms. Defense counsel complained of lack of
proper notice and sought to suppress the evidence. The court ruled as follows:

 [Defense Counsel]: So, I respectfully request that the Court grant my motion
in limine to instruct the State not to use the mushrooms in their case.

 

 THE COURT: All right. I will so instruct the State. Mushrooms can't be
referred to, can't be admitted in evidence and so on.

 

 . . . .

 THE COURT: All right. I agree with the Defense on this one, Mr. Kitchen. 
We're not going to have mushrooms. We're going [to] have marijuana, okay. That's
what the defendant is charged with. . . . 

 

 . . . .

 

 THE COURT: Bottom line there will be no mushrooms in this trial. That's
about as plain as I can get. No mushrooms. 

 

 However, despite the repeated warnings, during the State's direct examination of Deputy
Allred, the prosecutor showed Allred State's Exhibit 3 and requested identification, the "unknown
substance" from the CD case recovered from the car, i.e., the mushrooms. After a brief colloquy
among counsel and the trial court, the trial court granted the Motion for Mistrial. After dismissing
the first jury, the trial judge immediately summoned another venire, and proceeded with the retrial. 
No objection to the second trial was made. 

Procedural Waiver

 The State first argues that Barnett, by failing to file a trial objection to the second
prosecution, and seeking to raise the issue for the first time on appeal, has waived his right to raise
a double jeopardy defense. The State cites Gonzalez v. State, 8 S.W.3d 640 (Tex. Crim. App. 2000),
in support of its argument and contends the alleged double jeopardy violation is not apparent from
the face of the record and the record is not adequately developed as to the "prosecutor's state of
mind" in introducing the forbidden evidence despite the repeated instructions of the trial court. 

 The Gonzalez opinion clearly deals with a "multiple punishments for the same offense"
federal double jeopardy claim. Id. at 640, 645. The type of double jeopardy claim being asserted
here is "successive prosecution for the same offense." Bauder v. State, 921 S.W.2d 696, 697 (Tex.
Crim. App. 1996). Gonzalez noted the distinction between the two types of double jeopardy claims,
recognizing that "successive prosecution" claims are sufficiently "apparent" from the record as to
permit the raising of such claim in a pretrial writ of habeas corpus. Gonzalez, 8 S.W.3d at 643 n.9. 
In any case, even if applicable in this "successive prosecution" type of claim, we note that, as held
in Gonzalez, when the facts show the double jeopardy violation is clearly apparent on the face of the
record and when enforcement of usual rules of procedural default serve no legitimate state interest,
a double jeopardy claim may be raised for the first time on appeal. Id. at 643. 

 The State asserts that a double jeopardy violation is not apparent from the face of the record. 
We disagree. There is, on the face of the record, a mistrial granted at the request of the defense after
the prosecutor, after being repeatedly warned and admonished, offered into evidence materials he
was expressly instructed not to mention. Further, the State argues the record has not been developed
as to the prosecutor's state of mind at the time the erroneous evidence was introduced. We also
disagree with this contention. Assuming for the purpose of argument that such state of mind
evidence is required, it clearly appears in the record, as well as the state of mind of both the judge
and the defense attorney. 

 We hold the double jeopardy claim was adequately raised and may be considered on the
merits. 

Double Jeopardy-Mistrial at Request of Defendant-Due to Prosecutorial Error

 As a general rule, when a mistrial is declared in a criminal prosecution at the defendant's
request, the government is not barred under the United States Constitution from retrying the
defendant. However, a narrow exception to this general rule has been recognized in certain
situations when the mistrial is caused by prosecutorial misconduct. The circumstances under which
a defendant may invoke the bar of double jeopardy to a second effort to try him or her are limited
to those cases in which the conduct giving rise to the successful motion for mistrial was intended to
provoke the defendant into moving for a mistrial. Oregon v. Kennedy, 456 U.S. 667, 673, 102 S.Ct.
2083, 72 L.Ed.2d 416, 423 (1982). In his concurring opinion, Justice Powell joins the Court's
opinion which he characterizes as holding that the intention of a prosecutor determines whether his
conduct, viewed by the defendant and the court as justifying a mistrial, bars a retrial of the defendant
under the Double Jeopardy Clause. Id. at 456 U.S. 679. 

 In Bauder v. State ("Bauder I") and Ex parte Bauder, 974 S.W.2d 729, 732 (Tex. Crim. App.
1998) ("Bauder II"), the Texas Court of Criminal Appeals, under the double jeopardy provision of
Tex. Const. art. I, § 14, recognized a somewhat greater exception to the general rule.

 A successive prosecution is jeopardy barred after declaration of a mistrial at the defendant's
request, not only when the objectionable conduct of the prosecutor was intended to induce a motion
for mistrial, but also when the prosecutor was aware but consciously disregarded the risk that an
objectionable event for which he was responsible would require a mistrial at the defendant's request. 
It must be determined whether the defendant's motion for mistrial was a choice he or she made in
response to ordinary reversible error in order to avoid conviction, appeal, reversal, or retrial; or, on
the other hand, was the defendant required to move for a mistrial because the prosecutor deliberately
or recklessly crossed the line between legitimate adversarial gamesmanship and manifestly improper
methods that rendered trial before the jury unfair to such a degree that it could not have been cured
by judicial admonishment. State v. Lee, 15 S.W.3d 921, 923-24 (Tex. Crim. App. 2000) (citing and
analyzing Bauder I and Bauder II). When such conduct occurs, the government should bear the
responsibility for denying the defendant his or her right secured by the Double Jeopardy Clause to
be tried in a single proceeding by the jury first selected. Bauder I, 921 S.W.2d at 699. 

 In applying the Bauder rule, the mens rea under which the prosecutor acted is pivotal. It is
not sufficient that the incurable condition created by the prosecutor arose from simple negligence
or sloppiness. Instead, the prosecutor must have created it while either intending that his or her
actions result in a mistrial, or while actually knowing of that likelihood but nonetheless consciously
ignoring it. Vasquez v. State, 22 S.W.3d 28, 32 (Tex. App.-Amarillo 2000, no pet.). The Corpus
Christi court, in such a case, following State v. Lee, determined that the proper standard was whether
the State intended to induce a motion for mistrial or was aware of, but consciously disregarded, the
risk that its improper conduct would prompt a motion for mistrial by the defendant. State v.
Cabrera, 24 S.W.3d 528, 532 (Tex. App.-Corpus Christi 2000, pet. ref'd). The ruling in the
Cabrera case was that the state acted with such conscious disregard for the risk of a mistrial by its
continuing reference to testimony which the trial court had properly ordered excluded and the trial
court had not abused its discretion in ruling that double jeopardy barred a retrial. Id. at 532. The
prosecutor must be aware his conduct creates at least a risk that a mistrial will be required. In other
words, negligent conduct on the part of the prosecutor will not trigger double jeopardy protection
in this context. Goss v. State, 944 S.W.2d 748, 750 (Tex. App.-Corpus Christi 1997, no pet.). As
to how an appellate court may make this determination, we note that in the final disposition of
Samuel Bauder's journey through our appellate court system, Ex parte Bauder, 2 S.W.3d 376 (Tex.
App.-San Antonio 1999, pet. ref'd), the San Antonio court, in determining whether the prosecutor
acted with conscious disregard for the danger of a mistrial, looked to a discussion, on the record but
out of the jury's presence, in which the prosecutor basically said he did not mean to do it, that the
witness's answer was unexpected. At the hearing held on Bauder's plea in bar, the prosecutor said
he talked to the witness and, based on this interview, the answer he received at trial was a surprise. 
From this, the court concluded there was no deliberate or reckless conduct by the prosecutor. Id. at
377-78.

 In the present case, the prosecutor admitted on the record, before the trial court but out of the
jury's presence, that he had in fact attempted to introduce into evidence testimony concerning the
"mushrooms," into evidence, but stated it was not deliberate; he grabbed the wrong piece of evidence
by mistake, and the officer truthfully answered his question when shown the evidence. The trial
judge specifically stated she did not think he had done so deliberately, as he was a new prosecutor. 
Before beginning the second trial, defense counsel agreed with the trial judge that he did not feel the
prosecutor's actions were deliberate or intentional. Given these acknowledgments by counsel and
the trial court, we cannot say the prosecutor's actions were deliberate or reckless, but rather, at most,
negligent. Therefore, we find that under both state and federal standards regarding double jeopardy,
Barnett's rights were not violated by the second trial.


 The judgment of the trial court is affirmed.




 Ben Z. Grant

 Justice


Date Submitted: May 16, 2002

Date Decided: June 26, 2002


Publish



 UnhideWhenUsed="false" Name="Dark List Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00216-CR

                                                ______________________________

 

 

                                     THE STATE OF
TEXAS, Appellant

 

                                                                V.

 

                                   THOMAS JACOB EVANS, Appellee

 

 

                                                                                                  


 

 

                                          On Appeal from the County Court at Law #1

                                                             Gregg County, Texas

                                                         Trial Court
No. 2009-1097

 

                                                             
                                     

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            In early
March 2009, around 2:00 a.m.when the bars were closing for the
nightGladewater Police Officer Stephen Washburn observed an automobile driven
by Thomas Jacob Evans travel for an eighth to a quarter of a mile to the left
of center of Armstrong Road, a Gladewater street that had no center striping
but was wide enough for two lanes of traffic. 
Washburn concluded that Evans had committed a traffic violation
sufficient to authorize Washburn to stop Evans vehicle.  When Washburn stopped Evans, he discovered
evidence that confirmed Washburns earlier suspicion that Evans had been
driving under the influence of alcohol.

            Evans,
charged with driving while intoxicated (DWI),[1]
having one prior DWI conviction on his record, sought to suppress the evidence[2]
from the traffic stop.  After a pretrial
hearing,[3]
the trial court suppressed the evidence.  The State appeals.  Because Evans committed a traffic offense in
Washburns view, we reverse the suppression order and remand this case for
further proceedings.

            A few
minutes before stopping Evans, Washburn had been helping with an unrelated
traffic stop, when he had noticed the Evans vehicle pass his vehicle on the
right through the parking area of a nearby car lot.  That had sparked Washburns interest, and he
began following Evans.  After traveling a
short distance, Evans turned right on Shell Camp Road and then onto Armstrong Road,
a blacktop road with no center striping, but of sufficient width for two
traffic lanes.  Evans did not commit any
traffic violations before turning onto Armstrong Road.  

            After Evans turned onto Armstrong Road,
he began driving left of center and failed to maintain his lane of travel for
an eighth to a quarter of a mile.  Even
without the lane markings, it was obvious Evans was driving in the middle of
the road, prompting Washburn to activate his emergency lights.  When Evans failed to respond, Washburn hit
his air horn and siren.  In response, at
least initially, Evans failed to respond. 
Evans finally stopped in response to Washburns  continued  activation  of  his  cars  siren.   There  was  no  other  traffic
 in the area at 2:00 a.m.  

            Washburn
testified that the local bars usually close at 2:00 a.m., about the time he
noticed Evans drive through the car lot. 
Based on the fact that Evans was driving down the middle of the road at
2:00 a.m., Washburn believed Evans to possibly be intoxicated. 

 

 

 

 

 

 

            The trial
court made specific findings of fact and conclusions of law[4]
and suppressed the evidence.

 

            On appeal,
the State claims (1) Washburn had probable cause to stop Evans based on a
traffic violation, and (2) Washburn had a reasonable suspicion Evans was
driving while intoxicated.  Because the
traffic stop was authorized due to a traffic violation by Evans, we reverse the
suppression order.  Because that disposes
of this appeal, we do not reach the States second claim.

            We review a
trial courts ruling on a motion to suppress evidence under a bifurcated
standard of review.  Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).  We afford almost total
deference to the trial courts determination of the historical facts supported
by the record, especially when the trial courts fact-findings are based on an
evaluation of the credibility and demeanor of the witnesses.  Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman, 955 S.W.2d at 8990. 
When the trial courts rulings do not turn on the credibility and
demeanor of the witnesses, we apply a de novo standard of review.  Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).  That is, we give almost total deference to
the trial court in determining what the actual facts are, but we review de novo
the application of the law to those facts. 
Garcia v. State, 43 S.W.3d
527, 530 (Tex. Crim. App. 2001).  Because
the historical facts in the present case are not in dispute, we make a de novo
determination of whether those facts give rise to a reasonable suspicion of
criminal activity.  Guzman, 955 S.W.2d at 87.

 

 

 

The Traffic
Stop Was Authorized Due to a Traffic Violation by Evans

 

            The State
asserts Washburn had probable cause to make the traffic stop.  Detention, as opposed to an arrest, may be
justified on less than probable cause.  Carmouche, 10 S.W.3d at 328.  A warrantless automobile stop is a Fourth
Amendment seizure analogous to a temporary detention and, therefore, must be
justified by reasonable suspicion.  Berkemer v. McCarty, 468 U.S. 420, 439
(1984).  An officer conducts a lawful
temporary detention when in possession of reasonable suspicion to believe that
an individual is violating the law.  Ford v. State, 158 S.W.3d 488, 492 (Tex.
Crim. App. 2005).  Thus, if Washburn had
a reasonable suspicion that a traffic violation was in progress or had been
committed, the detention was lawful.  See Doyle
v. State, 265 S.W.3d 28, 31 (Tex.
App.Houston [1st Dist.] 2008, pet. refd).

            Reasonable
suspicion exists if the officer has specific articulable facts that, when
combined with rational inferences from those facts, would lead to a conclusion
that a particular person is, has been, or soon will be engaged in criminal
activity.  Brother v. State, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005); Doyle, 265 S.W.3d at 31 (citing Terry v. Ohio, 392 U.S. 1, 30
(1968)).  The determination of reasonable
suspicion is factual, and must be examined in terms of the totality of the
circumstances at the time of the stop.  Curtis v. State, 238 S.W.3d 376, 380
(Tex. Crim. App. 2007); Woods v. State,
956 S.W.2d 33, 38 (Tex. Crim. App. 1997). 
It is the States burden to prove the warrantless detention was
lawful.  State v. Huddleston, 164 S.W.3d 711, 716 (Tex. App.Austin 2005, no
pet.).

 

            The States
contention, urged at the suppression hearing and on appeal, is that Evans
violated Section 545.051 of the Texas Transportation Code.  This section of the Code provides that an
operator on a roadway of sufficient width shall drive on the right half of the
roadway unless the operator is passing another vehicle, an obstruction requires
moving the vehicle to the left of the center of the roadway, the operator is on
a roadway divided into three marked lanes for traffic, or the operator is on a
roadway restricted to one-way traffic.  Tex. Transp. Code Ann. § 545.051(a)
(Vernon 1999).

            Evans
contends that, because there is no evidence that he was speeding or driving
erratically, there was no traffic violation. 
Although the trial court found that Evans was driving to the left of
center on Armstrong Road for an eighth to a quarter of a mile and that Armstrong
Road was an undivided, two-lane road without a center stripe, it concluded that
Evans driving on Armstrong Road was not unsafe on an unmarked blacktop road
traveled only by Evans and Washburn.  The
trial court, therefore, concluded that Washburn lacked reasonable suspicion to
stop Evans for a traffic violation.  We
disagree.

            The
specific factual findings of the trial court indicate Evans was driving left of
center of the roadway for an eighth to a quarter of a mile and that the road
was an undivided, two-lane road without a center stripe.  In other words, Evans failed to drive on the
right half of the roadway as required by Section 545.051(a) of the Texas
Transportation Code.  See id. 
This observation alone was enough to create a reasonable suspicion that
a traffic violation was in progress.  See Rubeck v. State, 61 S.W.3d 741, 745
(Tex. App.Fort Worth 2001, no pet.) (officers observation of defendants
vehicle crossing center line one time provided reasonable suspicion for traffic
stop).  The fact that Armstrong Road did
not have a center stripe is of no consequence in making this
determination.  Section 545.051 of the Texas
Transportation Code does not limit the requirement of driving in the right lane
to only roadways marked with a center stripe. 
Tex. Transp. Code Ann. §
545.051(a).

            The trial
court concluded that, even though Evans drove his vehicle to the left of the
center of the roadway, to do so was not unsafe in this circumstance.  But Section 545.051 does not allow for a
driver to move from the right half of the roadway if that movement can be made
safely.  It merely requires that, if a
roadway is of sufficient width, a driver must remain on the right half of the
roadway, unless one of the statutory exceptions applies.  Washburns testimony established that none of
the exceptions to the requirement to drive on the right half of the roadway
applied in this circumstance.[5]  Accordingly, the determination of whether
Evans could safely drive left of center is irrelevant to our
reasonable-suspicion analysis.  See Bracken v. State, 282 S.W.3d 94, 9899
(Tex. App.Fort Worth 2009, pet. refd) (because Section 545.051(a) has no
unless movement can be made safely exception to prohibition against crossing
center of road, issue of safety is irrelevant to analysis of reasonable
suspicion).

            For
these reasons, we conclude that Washburn had a reasonable suspicion that a
traffic violation was in progress by virtue of the fact that Evans failed to
travel in the right half of the roadway for a distance of an eighth to a
quarter of a mile.[6]

            Having found that, based on the traffic violation,
Washburn had specific articulable facts to justify the traffic stop, we
conclude that the trial court erred in granting Evans motion to suppress.  Accordingly, we reverse the suppression order
and remand this cause to the trial court for further proceedings.

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          April 1, 2010

Date Decided:             April 2, 2010

 

Do Not Publish

 











[1]A
person commits an offense if the person is intoxicated while operating a motor
vehicle in a public place.  Tex. Penal Code Ann. § 49.04(a) (Vernon
2003).  Intoxicated means not having
the normal use of mental or physical faculties by reason of the introduction of
alcohol, a controlled substance, a drug, a dangerous drug, a combination of two
or more of those substances, or any other substance in the body.  Tex.
Penal Code Ann. § 49.01(2)(A) (Vernon 2003).

 





[2]Evans
sought to suppress evidence of his arrest and the fruit of that arrest,
alleging a warrantless arrest made without reasonable suspicion or probable
cause to believe Evans was engaged in criminal activity.  Evidence sought to be suppressed included written
and oral statements made by Evans to officers at or after his arrest, testimony
of officers regarding Evans statements or officers observations or identification
of Evans, any evidence obtained as a result of Evans arrest, and photographs
or video recordings taken by officers at Evans arrest.  

 





[3]At
the suppression hearing, the State called Washburn to the witness stand and
played for the court a portion of a video recording shot by a camera mounted in
Washburns patrol car.





[4]The
trial court made the following findings of fact:

 

1.             On March 3, 2009, Officer Stephen
Washburn of the Gladewater Police Department was assisting in a traffic stop
and first noticed defendants vehicle as it passed by him on the right in a
used vehicle parking lot at approximately 2:00 a.m.

 

2.             Officer Washburn then followed
defendants vehicle west on Highway 80 for a short period of time observing
defendant turn right onto Shell Camp Road and then turn right onto Armstrong
Road.

 

3.             Armstrong Road is an undivided,
two-lane blacktop road and was not marked with a center lane.  There is no shoulder, fog line or
curbing.  Armstrong Road is a public
street.

 

4.             Officer Washburn observed no
traffic violations by the defendant on the parking lot, Highway 80, or Shell
Camp Road.  Officer Washburn initiated a
traffic stop after observing defendants vehicle driving left of the center of
Armstrong Road for a distance of approximately an eighth to a quarter of one
mile.  Officer Washburn did not observe
any weaving by the defendant.  

 

5.             There was no other traffic on the
blacktop road, and the defendant did not appear to be driving in an unsafe
manner. 

 

6.             Officer Washburns testimony was
credible.

 

7.             The incident was captured on video,
reviewed by this Court and admitted into evidence.

 

The trial court made the following conclusions of law:

 

1.             The Court finds that Officer
Washburn did not have reasonable suspicion to stop defendant for a violation of
traffic code or for suspicion of driving while intoxicated under the totality
of the circumstances.

 

2.             The Court finds that the defendant
did drive his vehicle to the left of center of the roadway; however, the Court
does not find that to be unsafe on the blacktop road that is not marked with
center markings and void of any traffic other than the defendant and the
officer traveling in the same direction.

 

3.             Any finding of fact that is a
conclusion of law shall be deemed a conclusion of law.  Any conclusion of law that is a finding of
fact shall be deemed a finding of fact.

 





[5]Evans was not driving in the middle of the road for
the purpose of passing another vehicle or to avoid obstructions or hazards in
the roadway.  Armstrong Road was not
divided into three marked lanes for traffic, and it was not a one-way
street.  

 





[6]The
State also contends that Washburns authority to stop Evans was supplied by his
reasonable suspicion to believe that Evans was driving while intoxicated.  Because our ruling as to the traffic offense
is dispositive of this appeal, we do not reach that claim.