

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-19-00227-CR
_____

EDGAR LANE SHARP, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 371st District Court
Tarrant County, Texas[1]
Trial Court No. 1592327R; Honorable Mollee Westfall, Presiding

November 17, 2020

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Edgar Lane Sharp, Jr., was convicted following a jury trial of aggravated

sexual assault of O.L., a disabled person,[2] and was assessed a sentence (enhanced by

_____

[1] Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001 (West 2013).

[2] To protect the complainant's privacy as well as her guardian, we use their initials.

a previous felony conviction) of forty years' confinement.[3]  On appeal, Appellant asserts seven issues:  the district court (1)-(2) abused its discretion when it denied his motions to dismiss on the grounds of res judicata, collateral estoppel, and double jeopardy; (3)-(5) erred in denying his motion to suppress DNA evidence obtained from an aborted fetus, in violation of Appellant's rights under the United States Constitution, Texas Constitution, and article 38.23 of the Texas Code of Criminal Procedure; (6) erred in denying his request for a jury instruction under article 38.23 of the Texas Code of Criminal Procedure; and (7) asserts there was insufficient evidence that Appellant knew O.L. was disabled at the time the sexual acts were performed.  We overrule all of Appellant's issues and affirm the judgment.

## Background

In October 2018, Appellant was indicted–and reindicted in April 2019–for committing the offense of intentionally or knowingly causing his sexual organ to contact or penetrate the sexual organ of O.L., a disabled individual, without O.L.'s consent, in that he knew that O.L., as a result of a mental disease or defect, was incapable either of appraising the nature of the sexual assault or resisting.  In April 2019, Appellant filed motions to dismiss, asserting evidence regarding O.L.'s alleged lack of consent should be barred pursuant to the doctrines of res judicata, collateral estoppel, and the double jeopardy clause.  Appellant also sought to suppress the results of DNA testing performed on O.L.'s aborted fetus.  The district court denied his motions and held a jury trial.

---

[3] *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A), (2)(C), (e) (West 2019) (a felony of the first degree).

At trial in April 2019, the State's evidence indicated that O.L. was a 26-year-old woman who was deaf and disabled. She primarily communicated by sign language. O.L.'s IQ score was between 61-68, which placed her in the lower two to three percent of the population. Overall, she had the skills of a child approximately six years old.[4] She had been diagnosed as having IDD, i.e., intellectually delayed developmentally and bipolar. Her disability would not be obvious from her appearance. However, due to O.L.'s intellectual disability, she was gullible, naïve, and needed to be reminded daily to perform activities such as taking her medications, brushing her teeth, taking a bath, and wearing a coat when it was cold outside. She lived with her mother, O.B., who provided her with day-to-day care and assistance.

In July 2015, O.L. was found to be incompetent by the Tarrant County probate court; her mother, O.B., was appointed to serve as her guardian. O.L. was diagnosed as having IDD by the county office for the Texas Department of State Health Services. O.L. was assigned a caseworker, Marriama Gray, and began to receive state disability services, including access to an adult day care program. After O.B. underwent open heart surgery, O.L. was enrolled in an adult day care facility or "day hab" named C3 Christian Academy (C3). Among the services provided to O.L., C3 provided her daily transportation to and from the facility.

---

[4] Michael Parker, psychologist and director of eligibility services for the state, testified his testing revealed that O.L. had the motor skills of a four-year-old, the social and communication skills of a five-year-old, a personal living score of an eight-years-old, and a community living score of nearly a seven-year-old with a broad independent score of six years, two months. He testified she had difficulty staying on task in conversation, could write very little, was unable to make change from a five-dollar bill, and could not tell time on a wall clock. Her overall score was in the bottom three percentile meaning approximately ninety-seven percent of the population would score higher than O.L. He concluded she was disabled and qualified for state services.

In 2017, Appellant became O.L.'s regular bus driver to and from C3. O.L. was the first person he picked up and the last person he dropped off every day. In June 2017, O.B. noticed that O.L. was behaving differently, had not menstruated, and appeared to be pregnant. After visiting a health care provider and taking a pregnancy test, O.L's pregnancy was confirmed. O.L. did not seem to understand what had occurred.

O.B. called the police and O.L.'s caseworker. With Marriama Gray's assistance, O.L. identified Appellant as the man with whom she had sex. Soon after, O.B. took O.L. to the Whole Women's Health Care Center for an abortion. Detective K.F. Adcock accompanied the women to the clinic and, pursuant to a search warrant, obtained a fetal tissue sample for DNA testing. The testing confirmed that Appellant was the man who had impregnated O.L.

When Detective Adcock attempted to locate Appellant, he learned Appellant was no longer employed at C3 and had changed his residence. Pursuant to an arrest warrant, Appellant was arrested in Oklahoma and extradited to Texas. Detective Adcock testified that based on his thirty-five years of police experience and his observations of O.L., she was incapable of consenting to sex or understanding that sexual intercourse could result in pregnancy.

At the trial's conclusion, Appellant was found guilty of aggravated sexual assault of a disabled person and received an enhanced sentence of forty years' confinement. On appeal, Appellant contends that (1)-(2) O.L. had been found in a prior guardianship proceeding to be capable of consenting to sexual intercourse, and that litigation of this issue in his criminal case was barred under principles of res judicata, collateral estoppel,

and the U.S. Constitution's double jeopardy clause; (3)-(5) the district court abused its discretion when overruling Appellant's motion to suppress the search and seizure of the DNA from O.L.'s aborted fetus, in violation of the United States Constitution, the Texas Constitution, and article 38.23 of the Texas Code of Criminal Procedure; (6) the district court erred when it overruled Appellant's request for a jury instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure; and (7) the State's evidence was insufficient at trial because there was no evidence to support a finding that Appellant knew O.L. was disabled.

*Issues One and Two*

Appellant contends that the district court abused its discretion by overruling his motions to dismiss on the grounds of res judicata, collateral estoppel, and double jeopardy. He asserts that an earlier finding in O.L.'s guardianship proceedings that O.L. retained the right to consent to sex-related decisions barred reconsideration of the issue in the criminal proceeding. Assuming without deciding that the court's order in the guardianship proceeding evinces an implied finding that O.L. was competent to consent to sexual intercourse, we find that Appellant failed to satisfy the requisite elements for res judicata, collateral estoppel, or the double jeopardy clause.

We review the district court's decision to deny Appellant's motion to dismiss for abused discretion. *Vasquez v. State*, 22 S.W.3d 28, 31 (Tex. App.—Amarillo 2000, no pet.). In other words, Appellant must show that the court's decision falls outside the "zone of reasonable disagreement." *Benitez v. State*, 5 S.W.3d 915, 918 (Tex. App.—Amarillo 1999, pet. ref'd). Moreover, we consider issues of law de novo; *Vasquez,* 22 S.W.3d at

5

31, and it was Appellant's burden to come forward with evidence supporting his allegations.  *See Murphy v. State*, 239 S.W.3d 791, 795 (Tex. Crim. App. 2007) (defendant must meet the burden of proving the facts in issue were necessarily decided in prior proceeding to apply collateral estoppel); *Anderson v. State*, 635 S.W.2d 722, 725 (Tex. Crim. App. 1982) (burden on defendant to come forward with evidence of double jeopardy); *Ex parte Pinnock*, 437 S.W.3d 564, 568 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (party asserting res judicata bears the burden of proof).

The doctrines of res judicata and collateral estoppel share an element of proof: the party asserting the doctrine must have been a party in the two proceedings.  *See Ex parte Ruiz*, 543 S.W.3d 805, 826 (Tex. Crim. App. 2016) (res judicata is the doctrine that an existing final judgment or decree, rendered on the merits by a court of competent jurisdiction on a matter within its jurisdiction is conclusive of *the rights of the parties or their privies* in all other actions or suits on points and matters in issue in the first suit); *Murphy*, 239 S.W.3d at 794 (collateral estoppel is when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between *the same parties* in any future lawsuit relating to the same event or situation). Moreover, the doctrine of double jeopardy is applicable only in criminal cases.  *Ex parte Watkins*, 73 S.W.3d 264, 268 (Tex. Crim. App. 2002).  *See also Chapman v. State*, 349 S.W.3d 241, 250 (Tex. App.—Eastland 2011, pet. ref'd) (double jeopardy bars *any retrial* of a criminal offense).  There is no evidence that Appellant was a party to O.L.'s guardianship proceedings.  And certainly, there is no evidence that the findings in the guardianship proceedings invoked an element in Appellant's criminal case; the order was signed at least eighteen months before Appellant engaged in the acts that resulted in his

6

conviction.  Accordingly, we find the district court did not abuse its discretion by denying Appellant's motions and overrule Appellant's issues one and two.

*Issues Three, Four, Five, and Six*

Appellant next asserts that the district court erred in overruling his motion to suppress the DNA evidence obtained from O.L.'s aborted fetus.  He contends that the search and seizure of the epithelial cells from the aborted fetus was illegal because O.B. did not possess the authority to consent to an abortion on O.L.'s behalf.  We disagree and overrule each of these issues.

"[A] defendant seeking to suppress evidence obtained during a search always has the burden of proving standing to complain of the search."  *Handy v. State*, 189 S.W.3d 296, 299 n.2 (Tex. Crim. App. 2006).  A defendant must prove he was the "victim" of an unlawful search and seizure.  *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004).  "Only after a defendant has established his standing to complain may a court consider whether he has suffered a substantive Fourth Amendment violation."  *Id.*  Furthermore, evidence of standing is required under the federal and state constitutions and article 38.23 of the Texas Rules of Criminal Procedure*.  State v. Simon Prop. Grp.*, 357 S.W.3d 687, 690 (Tex. App.—Houston [14th Dist.] 2011, no pet.).  Standing is a question of law which we review de novo.  *Kothe*, 152 S.W.3d at 59-60.

Because there is no evidence of record that either Appellant or his property were the subject of the search and seizure, we find that Appellant failed to meet his burden of establishing his standing to contest the search and seizure of the cells obtained from O.L.'s aborted fetus.  *Id.* at 60 (defendant lacked standing to contest the legality of a

7

search of his companion and seizure of narcotics prior to his arrest).   Accordingly, we overrule Appellants third, fourth, and fifth issues.

In his sixth issue, Appellant similarly reasons the district court erred when it overruled his request for a jury instruction under article 38.23 of the Code of Criminal Procedure.   TEX. CODE CRIM. PROC. ANN. article 38.23(a) (West 2018).   When the evidence raises an issue about the legality of obtaining evidence, "the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event the jury shall disregard any such evidence so obtained."   *Id.*   To be entitled to an article 38.23 jury instruction, Appellant was required to raise a contested issue of fact as to whether the search and seizure was illegal.   *See Holmes v. State*, 248 S.W.3d 194, 199-200 (Tex. Crim. App. 2008).   *See also Madden v. State*, 242 S.W.3d 504, 510-11 (Tex. Crim. App. 2007) ("A defendant's right to the submission of jury instructions under article 38.23(a) is limited to a disputed issue of fact material to his claim of a constitutional or statutory violation that would render evidence inadmissible.").   Because we overrule Appellant's issues related to the search and seizure as a matter of law on standing, the district court did not err by denying Appellant's request for an article 38.23 instruction,  i.e., there was no contested issue of fact regarding the legality of the search and seizure properly before the district court.   *See Holmes*, 248 S.W.3d at 199-200; *Madden*, 242 S.W.3d at 511.   Appellant's sixth issue is also overruled.

8

*Issue Seven*

Appellant asserts there is insufficient evidence to support his conviction because there was no evidence to support a finding by the jury that Appellant knew O.L. was disabled.  We disagree.

When reviewing the sufficiency of the evidence, we consider all of the evidence in a light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt.  *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).  "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Id.*  "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  A reviewing court determines whether a jury's inferences are reasonable "based upon the combined and cumulative force of all the evidence when viewed in a light most favorable to the verdict."  *Id.* at 17.  We defer to the jury's resolution of conflicts in the evidence.  *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

At trial, the State was required to prove that Appellant intentionally or knowingly penetrated the sexual organ of O.L., a disabled person, without her consent with his sexual organ. TEX. PENAL CODE ANN. § 22.021(a)(1)(A), (2)(C) (West 2019).  A "disabled person" is a person older than thirteen years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect the person's self from

9

harm or to provide food, shelter, or medical care for the person's self. *Id.* at (b)(3). Here, the jury was instructed that such a sexual assault is without the consent of the other person if the other person has not consented and the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting the assault. *See* TEX. PENAL CODE ANN. §§ 22.011(b)(3), (4), 22.021 (c) (West 2019).

The jury heard testimony that O.L. is easily misled, believes everyone is her friend, is naïve, and follows people wherever they go. O.L. has been diagnosed by experts as having IDD and being bipolar. She has the overall skills of a six-year-old and must be reminded to perform necessary, daily activities. She cannot live independently. O.L. is also deaf and has difficulty staying on task while communicating. Although her outward appearance is normal, O.L.'s inability to stay on task while communicating was apparent during her testimony before the jury. Perhaps most significantly, witnesses testified that O.L. was incapable of consenting to having sex.

Appellant was O.L's regular bus driver during his employment with an adult care facility for disabled persons. The travel schedule suggests Appellant had more time to observe O.L. and her demeanor than any other client who needed bus services. Shortly after O.L.'s guardian discovered she was pregnant, Detective Adcock learned that Appellant had quit his job and left town. When Appellant was arrested, Detective Adcock asked him if he wanted to talk to him; Appellant responded, "No, it doesn't…it's not—doesn't really matter. I'm screwed."

Here, the jury was able to personally assess O.L.'s mental disabilities, as well as her outward manifestation to others, including her manner of speech, demeanor, and statements regarding her ability or inability to provide consent. *See Walley v. State*, No. 12-17-00312, 2018 Tex. App. LEXIS 3216, at *21-25 (Tex. App.—Tyler May 8, 2018, pet. ref'd) (collected cases cited therein). With respect to Appellant's knowledge of O.L.'s disability, the jury was also able to consider Appellant's employment and the time Appellant spent with O.L. The jury not only heard that O.L.'s disability is apparent, but could assess it for themselves at trial. The evidence more than sufficiently permitted the jury to conclude that Appellant had observed O.L.'s characteristics and knew that "as a result of mental disease or defect" O.L. was "incapable either of appraising the nature of the act or of resisting it." *See* TEX. PENAL CODE ANN. §§ 22.011(b)(3), (4), 22.021 (c) (West 2019). Viewing the evidence in a light most favorable to the jury's verdict, we therefore conclude that the jury could find beyond a reasonable doubt that Appellant intentionally or knowingly caused the penetration of O.L.'s sexual organ, without her consent, i.e., when he performed the act he was aware O.L. was a disabled individual. Appellant's seventh issue is overruled.

Conclusion

The district court's judgment is affirmed.


Lawrence M. Doss
Justice


Do not publish.

11