Tomas BENITEZ, Jr., Appellant.

v.

The STATE of Texas, Appellee.

No. 07–98–0405–CR.

Court of Appeals of Texas,
Amarillo.

Nov. 10, 1999.

---

Daniel R. Wheeler, Chappell, Lanehart & Wheeler, P.C., Lubbock, for appellant.

William C. Sowder, Dist. Atty., Wade Jackson, Asst. Dist. Atty., Lubbock, for appellee.

Before QUINN, REAVIS and JOHNSON, JJ.

BRIAN QUINN, Justice.

Appellant, Tomas Benitez, Jr., appeals his conviction for burglary of a habitation with intent to commit aggravated assault and for aggravated assault. He raises three issues. The first two concern an alleged violation of the Texas spousal privilege laws. The third involves the victim's identification of appellant as the assailant; allegedly, it was tainted by an unreasonably suggestive pretrial identification. We affirm.

### Background

After retiring to bed during the early evening of August 7, 1996, Armandina Uvalle was awaken by a loud "bang." She rose from bed, proceeded into her living room and confronted an individual she later identified as appellant. Surprised, Uvalle demanded to know why he had entered the house. The intruder demanded to know if she was the mother of an individual called "Junior." This exchange occurred over a period of five to ten minutes, after which the intruder began striking Uvalle. The latter ran from her house. She met with little success, however, for her attacker followed and continued to beat her. Uvalle momentarily lost consciousness, but when she came to she saw appellant walking away and entering a light blue van with many windows. This entire episode occurred while it remained "light" outside.

Eventually, the police were contacted. When they arrived at the scene, Uvalle described her assailant to them and told them that the intruder wore a cap and drove away in a light blue van. With this information, the police began to search the neighborhood and came upon a blue/gray van parked some five to seven houses from the scene of attack. An officer approached the van, found no one in it, but after a search of the premises, discovered appellant underneath a car parked in front of the van. The officer believed that appellant matched the description of the attacker. Appellant was arrested.

Approximately five days later, the police showed Uvalle a photographic spread containing six pictures, including one of appel-

lant. When asked if she could identify anyone, Uvalle chose the picture of appellant as well as the pictures of two other individuals.

Several more days passed before Uvalle contacted the police and was asked to look at another photo spread. Apparently, she had dreamed about the attack and saw the face of the assailant in the dream. A second spread was compiled containing six pictures, however, appellant's picture was the only one which appeared in both the first and second arrays. When shown to Uvalle, the picture of appellant was selected as that of the intruder. Subsequently, the State indicted, tried, and convicted appellant.

### Issue One—Spousal Privilege

Through his first issue, appellant contends that the trial court erred in refusing to grant him a mistrial after his wife was called as a witness by the State and invoked her spousal privilege. We disagree.

#### a. Standard of Review

In reviewing a trial court's refusal to grant a motion for mistrial, we determine whether the decision constituted an abuse of discretion. *Ex parte Bauder*, 974 S.W.2d 729, 731 (Tex.Crim.App.1998). Discretion is so abused when the decision falls outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990). However, if the decision can be supported on any ground, even one unmentioned by the parties or trial court, then no error occurred. *State v. Jennings*, 958 S.W.2d 930, 934 n. 1 (Tex.App.—Amarillo 1997, no pet.); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). Next, "[i]n a criminal case, the spouse of the accused has a privilege not to be called as a witness for the state." TEX.R. EVID. 504(b)(1).

Said privilege, however, can be invoked only by the witness, not the accused. *Id.* at 504(b)(3); *Johnson v. State*, 803 S.W.2d 272 (Tex.Crim.App.1990), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991). The latter rule differs from that applicable before the Texas Rules of Criminal Evidence were implemented. Then, not only was the spouse utterly disqualified from testifying, TEX.CODE CRIM. PROC. art. 38.11 (repealed in 1986); *Johnigan v. State*, 482 S.W.2d 209, 210 (Tex.Crim.App.1972), but also, the accused could invoke the disqualification. *Johnson v. State*, 803 S.W.2d at 281.[1] Additionally, it was error for the state to call the spouse especially when the manner of its doing so forced the defendant "to object in the presence of the jury" and "convey[ed] to the jury the impression that the wife, if allowed to testify, would rebut defensive testimony previously given in the case." *Johnigan v. State*, 482 S.W.2d at 210–11; *accord, Stewart v. State*, 587 S.W.2d 148, 153 (Tex.Crim.App. 1979) (reiterating *Johnigan* ). That the objection may not have been made in front of the jury did not necessarily cleanse the situation of taint, as indicated in *Johnigan*. *Johnigan v. State*, 482 S.W.2d at 210. This was so because the impression alluded to above could still arise depending upon the circumstances. *Id.*

Yet, as we said, *Johnigan* controlled while article 38.11 remained viable. With the advent of Texas Rule of Evidence 504, the extent of its authority is questionable for several reasons. First, the State can now call the spouse to testify. TEX.R. EVID. 504(b)(1). Thus, calling the spouse is not *ipso facto* error like it was under article 38.11. Second, while the spouse must be willing to voluntarily appear, *id.*, the State has no duty to prove that she testi-

1. Before repeal, article 38.11 stated, among other things, that "[t]he husband and wife may, in all criminal actions, be witnesses for each other, but except as hereinafter provided, they shall in no case testify against each other in a criminal proceeding." The excep-

tions alluded to involved assaults by one spouse upon the other or their child, incest, bigamy, interference with child custody, and non-support. TEX.CODE CRIM. PROC. art. 38.11 (Vernon 1979), *repealed*, Acts 1985, 69th Leg., ch. 685, § 9(b).

fied voluntarily. *Fuller v. State*, 858 S.W.2d 528, 532 (Tex.App.—Eastland 1993, pet. ref'd). Third, while claims of privilege *should* be made "without the knowledge of the jury," Texas Rule of Evidence 513 does not require that they be so asserted. TEX.R. EVID. 513(b)[2] (emphasis added). Fourth, when a claim of privilege is made under circumstances which could lead the jury to draw an adverse inference therefrom, a litigant is entitled to an instruction that no inference should be drawn from the claim. *Id.* at 513(d). Inherent in Rule 513(d) is the assumption that a privilege may be claimed before a jury, especially since subsection (b) does not forbid it. If this were not so then there would be no need for an instruction.

Fifth, since the repeal of article 38.11, the Texas Court of Criminal Appeals has revisited situations like that involved in *Johnigan.* For instance, in *Johnson v. State*, the State desired to call the accused's wife as a witness. Prior to doing so, however, it was told that the spouse would invoke her Rule 504 privilege. Nevertheless, it called the spouse who then invoked the privilege before the jury. In determining whether this was error, the court focused upon two indicia. The first concerned the jury's actually perceiving the spouse invoke the privilege. In that regard, the court reiterated that it was the invocation of the privilege *in front of the jury* which had the potential of inducing the fact-finder to infer that the witness's testimony would have been adverse to the accused. *Johnson v. State*, 803 S.W.2d at 282–83 (emphasis added). Supporting this observation, it cited to authority condemning situations wherein the prosecutor 1) acted in a manner which allowed the jury to hear the spouse claim the privilege, or 2) demonstrated for the jury that the privilege was claimed. *Id.* at 282 n. 7.

**2.** In attempting to assure that the claim is made "without the knowledge of the jury," Rule 513(b) does not require the court to address the matter pre-trial or while the jury

The second indicia alluded to by the *Johnson* court involved the prosecutor's prior knowledge of the witness's intent to claim the privilege. *Id.* at 282–83. In that regard, it cited to several opinions by federal courts of appeal which condemned the practice of calling the witness when it was known that the privilege would most likely be invoked. *Id.*

■ From *Johnson*, the repeal of article 38.11, and the directives of Rules 504 and 513, we derive the following. Error arises when the spouse is called as a witness by the State when it has reason to believe that the privilege will most likely be invoked and the jury perceives that the spouse invoked the privilege. We caution, as do *Johnson* and Rule 513(b), that, to the extent practicable, the proceeding should be conducted in a manner which facilitates the making of the claim without the knowledge of the jury. Yet, it is not automatic error if the jury divines what occurred. Rather, it is the jury's perception of the situation, coupled with the knowledge by the prosecutor that the claim would likely be invoked, which creates the error.

### b. Application of Standard

■ At bar, the prosecution called Mary Benitez, appellant's wife, as a witness. When that occurred, appellant's attorney immediately approached the bench and requested a hearing outside the presence of the jury. The jury was excused. Thereafter, appellant asked the court to inform Ms. Benitez of her privilege not to testify. Discussion ensued and culminated with the judge informing the witness of her privilege, which Ms. Benitez then invoked. When she did, appellant moved for a mistrial, contending that the calling of Ms. Benitez, coupled with his objection to her testifying, constituted harmful error. The trial court disagreed and overruled the motion.

is excluded from the courtroom. It merely directs that it should be done in a way that insulates the jury from knowing what has occurred.

As can be seen from the above circumstances, the jury was present when Ms. Benitez was called as a witness. However, no one mentioned anything about privilege within the earshot of the jury. Nor was the jury in the courtroom when Ms. Benitez invoked the privilege. According to the record, the prosecutor also had notified appellant of his intent to call Ms. Benitez, and appellant uttered nothing indicating that he would object. So too was Ms. Benitez queried, during a pre-trial hearing, about facts relating to the accusation against her husband without objection by appellant. Under these circumstances, we cannot say that the jury perceived that Ms. Benitez invoked the privilege or that the prosecutor called her while knowing that she would most likely assert it. Consequently, we find no error requiring mistrial. The decision to deny mistrial fell within the zone of reasonable disagreement and constituted a legitimate exercise of discretion.

### Issue Two—Jury Instruction

Under issue two, appellant contends that the trial court erred in refusing to grant him an instruction regarding his wife's invocation of the spousal privilege. We again disagree.

#### a. Standard of Review

■ Whether to instruct the jury on a matter lies within the court's discretion. *Dunn v. State*, 979 S.W.2d 403, 409 (Tex. App.—Amarillo 1998, pet. ref'd). Only when that discretion is abused are we empowered to interfere.

■ Next, as mentioned above, Texas Rule of Evidence 513(d) states that "upon request any party against whom the jury might draw an adverse inference from a claim of privilege is entitled to an instruction that no inference may be drawn therefrom." Implicit therein is the need for circumstances justifying the instruction, however. Best illustrating this is the following. If no one invokes a privilege, or if the privilege is invoked without the knowl-

edge of the jury, then there is no likelihood that the fact-finder "might draw" any adverse inference. Indeed, to require an instruction under those scenarios would be to require the judge to interject matter which, in itself, could lead to unwanted speculation by the jury. So, logically, the right to an instruction under 513(d) arises only when the circumstances present a need for it. *Rios v. State*, 990 S.W.2d 382, 384 (Tex.App.—Amarillo 1999, no pet.) (stating that generally a litigant is entitled to an instruction only when evidence supports submission of the instruction).

#### b. Application of Standard

As illustrated under issue one, nothing of record indicates that the jury had knowledge of Ms. Benitez invoking the spousal privilege. Because of this, it could not be said that the fact-finder "might draw" an adverse inference from her claim of privilege. Thus, there was no need to instruct the jury as requested by appellant.

Furthermore, we disagree with appellant's supposition that *Johnigan* held that merely calling a spouse to testify coupled with her subsequent failure to speak creates circumstances requiring an instruction. In *Johnigan*, more occurred. The accused had just finished testifying when the prosecutor asked "for a moment," conferred with the accused's wife in front of the jury, and then called her as a witness. At that point, the parties approached the bench, and, after the bench conference, the witness was never mentioned again. *Johnigan v. State*, 482 S.W.2d at 210–11. It was 1) the prosecutor's openly conferring with and then calling the spouse immediately after the accused testified, and 2) the witness's failure to testify that potentially created the wrong appearance, according to the *Johnigan* court. *Id.* at 211. Here, we had no such circumstances. The accused never testified at bar, nor does the record reflect that the prosecutor talked to Ms. Benitez in front of the jury before calling her immediately after the accused

testified. Given these distinctions, we find *Johnigan* inapposite.

### Issue Three—Tainted Identification of the Accused

Lastly, the trial court purportedly erred by allowing an "in court identification of appellant where it was based on a suggestive photo line-up." That is, appellant believes that the pretrial identification procedure utilized by the police was unreasonably suggestive and irreparably corrupted Uvalle's identification of appellant as the assailant. We disagree.

#### a. Standard of Review

■ Whether the trial court erred in admitting into evidence a witness's identification of the accused involves a mixed question of law and fact. *Loserth v. State*, 963 S.W.2d 770, 772–73 (Tex.Crim.App. 1998). Thus, we extend great deference to the trial court's resolution or derivation of the historical facts pertinent to the case. *Id.* However, the consequences arising from those historical facts can be reviewed *de novo. Id.* at 773. In other words, we need not grant deference to the trial court's determination that the historical facts compelled or supported the decision to admit or exclude the evidence. Whether they did is a matter which we decide anew and unhindered.

■ Next, in making our decision we must remember that the focus lies upon the reliability of the identification. *Loserth v. State*, 963 S.W.2d at 771–72; *Harris v. State*, 827 S.W.2d 949, 959 (Tex. Crim.App.1992). While the procedure used by the police to obtain the identification may be unreasonably suggestive, that does not mandate that the identification be excluded. *See Harris v. State*, 827 S.W.2d at 959 (noting that the evidence may be admitted if it is nonetheless reliable). Rather, all depends upon whether the procedure gave rise to a "very substantial likelihood of irreparable misidentification." *Loserth v. State*, 963 S.W.2d at 771–72. And, in turn, whether such a likelihood of misidentification exists depends upon whether or not it can be said, based upon review of all the circumstances, that the identification was reliable. *Id.; Harris v. State*, 827 S.W.2d at 959. Among the factors which merit consideration when determining that issue are 1) the witness's opportunity to view the criminal at the time of the crime, 2) the witness's degree of attention, 3) the accuracy of the witness's prior description of the criminal, 4) the witness's level of certainty when making the identification, and 5) the length to time between the crime and identification. *Loserth v. State*, 963 S.W.2d at 772.

#### b. Application of Standard

■ Initially, appellant contends that the procedure utilized by the police to obtain the identification at bar was unreasonably suggestive. This was allegedly so because the appellant's picture was the only one included in both the first and second photo arrays shown Uvalle, and that violated *Cantu v. State*, 738 S.W.2d 249 (Tex.Crim.App.1987). In *Cantu*, the court held that showing the same picture of the accused in several arrays was a suggestive procedure. *Id.* at 252. Nevertheless, it also opined that "[n]ot *every* case in which several arrays or displays ... containing *different* pictures of the defendant [is the procedure] suggestive" and "[s]uggestiveness must be determined by the circumstances of each case." *Id.* (emphasis added).

Here, unlike the situation in *Cantu*, Uvalle was not shown the same picture of appellant in each array. Rather, the first was of appellant with his eyes closed and head back, as if sleeping. The second captured appellant with his eyes open staring at the camera. The latter visage was undoubtedly more akin to that of Uvalle's attacker given that the attacker obviously had his eyes open when confronting, chasing, and striking her. So too did the photos differ in that those contained in the second array were smaller than those in the first. Those in the second also depict-

ed the head and face of each person, while those in the first also depicted the upper torso and side-view of the individual. Thus, the pictures utilized by the police illustrated "different looks" of appellant, which was a procedure that the judges in *Cantu* believed could be necessary in a particular case. *Id.* at 252.

Nevertheless, we need not decide if the procedure utilized was impermissibly suggestive. This is so because other circumstances dispel any substantial likelihood of irreparable misidentification. For instance, it was still light outside when the incident occurred. Furthermore, while facing him, Uvalle stood three to five "steps" away from appellant, and did so for approximately five to ten minutes.

Next, the description given the police by Uvalle (that of an Hispanic male, approximately 50 years old, standing slightly taller than 5'5" with a thick moustache) generally matched appellant's actual appearance (that is, a 55 year old Hispanic male standing 5'8" with a thick moustache). So too did the description she gave to the police of the van driven by the assailant generally match that of the van discovered at appellant's house.

The police asked Uvalle to first identify appellant five days after the incident. At that time, one of the three pictures she selected as appearing akin to the assailant was that of appellant. Later she explained that she did not pick only his picture from the group because she was in pain, was not concentrating, and was scared. Nevertheless, when the second array was shown to her approximately eight days later, she selected only the visage of appellant. Asked about the certainty of her selection, Uvalle unequivocally confirmed that she was certain.

From the foregoing, we find evidence supporting the conclusion that Uvalle had more than ample opportunity to view her attacker, paid a high degree of attention to him, and was certain of her identification. Additionally, the time that lapsed between the incident and her identification of appel-

lant was not enough to suggest that her memory had grown stale. This, coupled with the fact that two different pictures of appellant were shown Uvalle and her explanation as to why she equivocated during presentation of the first array, compel us to hold that Uvalle's identification was reliable.

Accordingly, we reject each issue urged by appellant and affirm the judgment entered below.