NO. 07-00-0093-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

AUGUST 13, 2002

_____


GILBERT SALINAS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 100TH DISTRICT COURT OF COLLINGSWORTH COUNTY;

NO. 2398; HONORABLE JOHN T. FORBIS, JUDGE

_____

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

Appellant Gilbert Salinas appeals from his conviction for aggravated robbery and sentence of incarceration for life. By eight issues he asserts that the trial court committed reversible error in (1) failing to discharge the jury venire because it was unconstitutionally constituted, (2) allowing the State to ask improper questions during jury voir dire, (3) denying appellant's request for appointment of an expert on eyewitness identifications, (4) denying a continuance to allow appellant to secure funds to hire an eyewitness identification expert, (5) denying appellant's motion for directed verdict, (6) allowing

appellant's pen packet into evidence during the punishment phase of trial, (7) cumulating appellant's sentence with unproved prior convictions and (8) allowing a witness to identify appellant after the witness was involved in an impermissibly suggestive photo lineup identification of appellant. We affirm.

## BACKGROUND

On October 28, 1998, at approximately 2:30 a.m., two men entered the Allsup's convenience store in Wellington, Texas. The only other occupant of the store at that time was David Roblez, who was an Allsup's employee.

Roblez was in a walk-in cooler in the back of the store when the men entered. He heard a bell indicating that someone had entered the door, and went to the counter in the front of the store. When he arrived at the counter, he talked to one of the men who had entered the store. Roblez identified the man he talked to as Hispanic. The Hispanic man told Roblez to give him the money from the cash register and the keys to Roblez's car. Roblez believed the man to be "kidding," and did not immediately give the money and keys to him. Roblez's testimony about what happened next was as follows:

Q. After this particular request what happened?

A. Well, he said give me the keys to your car and money out of the register before I go off on your — butt there — used another word. And I said, "Yeah. Right."

And that's when he called another — the other gentlemen [sic] that was with him, over.

\* \* \*

2

Q. What happened when he called him?

A. He stepped forth and he pulled a gun out on me.

The second male was black and exhibited a pistol. Roblez then gave the men his car keys and the money from the register. The Hispanic robber then asked about the contents of a second cash register which was empty. When Roblez replied that the register contained no money, the Hispanic robber told Roblez to open the register before the other robber "goes off on your butt." The black robber then re-approached Roblez with the gun he earlier produced. Roblez opened the second register, which contained no money. The two robbers left the store and eventually drove off in Roblez's car.

Roblez reported the robbery to the sheriff's office. After interviewing Roblez, deputy Overstreet compiled and presented a photo lineup comprised of photographs of six Hispanic men to Roblez to see if he could identify any of the men in the lineup as a participant in the robbery. Roblez identified appellant's picture. Roblez also identified appellant at trial as the Hispanic male who participated in the robbery.

A jury convicted appellant. In connection with the punishment phase of trial, appellant pled "true" to two enhancement crimes alleged by the State. Despite appellant's true pleas, the State offered and the trial judge admitted pen packets reflecting the two crimes alleged for enhancement purposes. The jury sentenced appellant to life imprisonment.

Appellant challenges his conviction and his sentence by eight issues. He asserts that (1) his Sixth Amendment right to a jury of his peers was violated because the jury

3

panel contained 5% non-caucasians while the population of Collingsworth County as a whole was 23.5% non-caucasian; (2) the prosecution was allowed to pose questions to the jury panel which were designed to have members of the panel pre-commit to findings based on specified facts and which misstated the law to the panel; (3) the trial court erroneously denied his motion for appointment of an expert witness on eyewitness identification reliability; (4) the trial court denied appellant's motion for continuance so appellant could seek funds to employ such a witness; (5) the trial court erroneously denied appellant's motion for instructed verdict because the prosecution presented no evidence of his knowledge that a robbery was going to take place, that the other robber had a gun and intended to use it during the robbery, and that appellant intended to aid the other robber in using the gun; (6) the trial court erred during the punishment phase of trial in admitting "pen packets" as proof of the enhancement allegations of the indictment because appellant had already pled true to the enhancement paragraphs; (7) his life sentence should not have been cumulated with his sentences from other convictions because the other convictions were not proved at trial; and (8) a photographic lineup presented to the alleged robbery victim by the sheriff's office was impermissibly suggestive. We will address appellant's issues in the sequence he urges them.

Issue 1: Composition of the jury panel

By his first issue appellant urges that his right to a jury of his peers under the Sixth Amendment to the United States Constitution was violated because the jury panel contained 5% non-caucasians while the population of Collingsworth County as a whole was 23.5% non-caucasian. He cites Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42

4

L.Ed.2d 690 (1975). The State responds that appellant failed to preserve error because he failed to challenge the array in writing supported by affidavit, as is required by TEX. CRIM. PROC. CODE ANN. art. 35.07 (Vernon 1999).[1] The State further urges that the jury venire was properly selected via use of a jury wheel, and that in any event, the mere showing of a disparate percentage of jurors of appellant's race from the general population of the county is not sufficient to prove violation of appellant's Sixth Amendment rights.

The State is correct. Appellant does not claim to have challenged the array in writing. Moreover, even if appellant had preserved error, his contention is without merit. The burden is on appellant to prove, as part of his *prima facie* showing of a fair cross-section requirement violation, that the under-representation of a distinctive group in the jury venire is due to systematic exclusion of members of the group by the venire-selection process. See Duren v. Missouri, 439 U.S. 357, 364, 366, 99 S.Ct. 664, 668-69, 58 L.Ed.2d 579 (1979); Pondexter v. State, 942 S.W.2d 577, 580-81 (Tex.Crim.App. 1996). He does not claim that he proved a systematic exclusion of a distinctive group from the venire.

In considering appellate issues based on the federal constitution we follow the guidance of the United States Supreme Court. See State v. Guzman, 959 S.W.2d 631, 633 (Tex.Crim.App. 1998). And, it is axiomatic that intermediate Texas appellate courts have the duty to follow pronouncements of the Texas Court of Criminal Appeals. See Flores v. State, 883 S.W.2d 383, 385 (Tex.App.--Amarillo 1994, pet. ref'd). Both the United States Supreme Court and the Court of Criminal Appeals have held that in order

---

[1]Further reference to a provision of the Code of Criminal Procedure will be by reference to "CCP art. _."

to establish a *prima facie* violation of the requirement that a fair cross section of the community be represented in the venire, appellant must show that: (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this under-representation is due to systematic exclusion of the group in the jury venire selection process. See Duren, 439 U.S. at 364, 99 S.Ct. at 668; Pondexter, 942 S.W.2d at 580. Appellant does not reference any evidence that under-representation of any group in jury venires in Collingsworth County is due to systematic exclusion. We overrule appellant's first issue.

Issue 2: Use of "commitment" questions by the State
during voir dire

Appellant's second issue urges error by the trial court in allowing the prosecution to pose questions to the jury panel which were designed to have members of the panel pre-commit to findings based on specified facts, and to make improper statements of law to the panel. The issue is based on the prosecutor's (1) asking the panel members if they could return a verdict of guilty if the State presented only one witness, but ". . . each element of the indictment is proved to you beyond a reasonable doubt based solely on the testimony of only [that] one witness" and (2) telling the panel that the law required a guilty verdict if the State proved the elements of the crime beyond a reasonable doubt. Appellant cites Atkins v. State, 951 S.W.2d 787, 789 (Tex.Crim.App. 1997), as authority for his first assertion; he cites no authority for his second.

6

The State urges that appellant did not preserve error by timely objection in the trial court. As to the merits of appellant's first assertion, the State maintains that its questions did not try to commit jurors to a particular verdict based on a hypothetical or specific set of facts, but were appropriate inquiries to determine whether prospective jurors had a bias or prejudice as to the law.

The trial court has broad discretion in ruling on matters during voir dire, and its rulings are reviewed under an abuse of discretion standard. See id. at 790; Camacho v. State, 864 S.W.2d 524, 531 (Tex.Crim.App. 1993). Hypothetical questions may be asked during voir dire to ascertain the views of prospective jurors and to help explain the law, but such questions may not be asked in such manner as to attempt to obtain a commitment from a prospective juror to a particular verdict based on a hypothetical set of facts. See Standefer v. State, 59 S.W.3d 177, 179 (Tex.Crim.App. 2001); Atkins, 951 S.W.2d at 789. But, a State's attorney may make inquiries of the venire to determine if any member has a bias or prejudice against any phase of the law upon which the State is entitled to rely for a conviction. See CCP art. 35.16(b)(3); Castillo v. State, 913 S.W.2d 529, 533-34 (Tex.Crim.App. 1995).

As noted in Standefer, the "commitment question" rule is easily stated but not necessarily easily applied. See Standefer, 59 S.W.3d at 179. For example, Standefer notes that the question "Could you find someone guilty on the testimony of one witness?" is an improper commitment question because a party is not entitled to have a prospective juror commit on whether the juror can convict based on the testimony of a single witness. Id. at 183 n.28. Yet, an inquiry worded as the State worded its question in the matter

7

before us seems to have been approved because the State is entitled to know if a prospective juror can abide by the burden of proof set by law, or if the prospective juror will disregard the law and hold the State to some standard of proof subjective to the veniremember. See Castillo, 913 S.W.2d at 533-34. In other words, the question "Could you find someone guilty on the testimony of one witness?" is an improper commitment question, whereas the question "If the State presented only one witness, and you as a juror believed that witness, and the testimony of that witness convinced you beyond a reasonable doubt of the defendant's guilt, could you find the defendant guilty?" is a permissible inquiry. See CCP art. 35.16(b)(3); Standefer, 59 S.W.3d at 183; Castillo, 913 S.W.2d at 533-34.

In the matter now before us, the State did not seek to commit the prospective jurors in conjunction with specific facts of the case as was done in Atkins. At most, the State's attorney may have phrased his question awkwardly on one occasion. Otherwise, the contexts of the questions and responses of the veniremembers support the trial court's conclusion that the questions were not designed to attempt to obtain commitments from the jurors based on specific sets of facts; but rather, were inquiries to determine whether the jurors could follow the law as to the State's burden of proof, even if the proof was presented by only one witness. Moreover, the question incorporated a correct statement of the State's burden of proof and we conclude that even if it was improper, the question did not affect substantial rights of appellant. See TEX. R. APP. P. 44.2(b). The trial court did not abuse its discretion in overruling appellant's objection. See Castillo, 913 S.W.2d at 533-34.

8

Appellant also urges as part of his argument under this issue that the State's attorney misstated the law during voir dire by telling the jury that the law required a guilty verdict if the testimony of one witness proved all elements of the indictment beyond a reasonable doubt. Appellant made no objection at trial on such basis, however. To preserve error for appellate review, the complaining party must make a timely objection specifying the grounds for the objection, if the grounds are not apparent from the context; the objection must be made at the earliest possible opportunity; the complaining party must obtain an adverse ruling from the trial court; and the issue on appeal must correspond to the objection made at trial. See Dixon v. State, 2 S.W.3d 263, 265 (Tex.Crim.App. 1998). Error was not preserved as to appellant's argument that the law was misstated by the State's attorney. Issue two is overruled.

Issue 3: Failure to appoint expert on eyewitness identifications

Appellant's third issue asserts that the trial court erroneously denied his motion for appointment of an expert witness on eyewitness identification reliability. The State's response is that appellant did not show a necessity for such an expert, did not prove that eyewitness identifications were complex matters necessitating expert testimony, or that expert testimony on such subject matter was reliable.

The trial court's denial of a motion to appoint an expert witness to assist the defense is reviewed for abuse of discretion. See Griffith v. State, 983 S.W.2d 282, 287 (Tex.Crim.App. 1998). The trial judge's action in denying a motion to appoint an expert to

9

assist the defense is reviewed as of the time of the denial of the motion. See Rey v. State, 897 S.W.2d 333, n.9 (Tex.Crim.App. 1995).

The State must provide a defendant with access to an expert witness if fundamental fairness requires such access in order for the defendant to have the basic tools necessary to present his defense. See Ake v. Oklahoma, 470 U.S. 68, 77, 105 S.Ct. 1087, 1093, 84 L.Ed.2d 53 (1985); Busby v. State, 990 S.W.2d 263, 271 (Tex.Crim.App. 1999); Griffith, 983 S.W.2d at 286; Rey, 897 S.W.2d at 337. The question to be answered in determining whether access to the expert is a "basic tool" necessary to presentation of a defense is whether, and under what conditions, participation of the particular expert is important enough to preparation of a defense that the State is required to provide access for the defendant. See Ake, 470 U.S. at 77, 105 S.Ct. at 1093. The key to answering the question is whether there is a high risk of an inaccurate verdict absent access to the expert. See id.; Busby, 990 S.W.2d at 271; Griffith, 983 S.W.2d at 286; Rey, 897 S.W.2d at 337.

In determining whether a defendant is entitled to access to an expert, three factors are relevant: (1) the private interest that will be affected by the action of the State; (2) the governmental interest that would be affected if the access is to be provided; and (3) the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. See Ake 470 U.S. at 77, 105 S.Ct. at 1093; Rey, 897 S.W.2d at 337. The necessity for appointment of an expert depends on whether the defendant has made a sufficient threshold showing of need for the expertise in his particular case. See id. In

10

order for an indigent defendant to make a threshold showing for appointment of an expert to assist the defense, the defendant's claims must be based upon more than undeveloped assertions that the requested assistance would be beneficial. Moore v. State, 935 S.W.2d 124, 130 (Tex.Crim.App. 1996).

The first and second factors favor appellant's position. A defendant's interest in the accurate disposition of a criminal proceeding where his life or liberty is at stake is compelling and weighs heavily in the analysis. Ake, 470 U.S. at 78, 105 S.Ct. at 1093; Rey, 897 S.W.2d at 337. Likewise, the State maintains an interest in the accuracy of the proceedings. Id. The State's interest in accurate disposition of criminal trials is so strong that it outweighs other, less compelling interests. See, e.g., Ake, 470 U.S. at 1094, 105 S.Ct. at 1094; and Rey, 897 S.W.2d at 339 (State's interest in judicial economy outweighed by both State's and defendant's interest in accurate disposition of criminal trial); see also Elmore v. State, 968 S.W.2d 462, 465-66 (Tex.App.--Eastland 1998, pet. ref'd) (potential economic burden of appointing defense experts in DWI trials outweighed by individual's right to fair and accurate adjudication of criminal case.)

Although both the first and second factors weigh in favor of defendant, it is the third factor which is given the greatest consideration in the analysis. Rey, 897 S.W.2d at 339. This third factor requires a preliminary showing by the defendant that the issue for which he seeks access to an expert is likely to be a significant issue at trial. If such an initial showing is made, then the probable value of the assistance sought is weighed against the risk of error in the proceeding if such assistance is not offered. Ake 470 U.S. at 83, 105 S.Ct. at 1094,1096; Rey, 897 S.W.2d at 337, 399.

11

In the present case the evidence and argument offered by appellant in support of his motion amounted to assertions that the requested assistance would be helpful to appellant's case. He did not assert that the State would have such experts available to consult or to testify. Nor did he assert that the subject matter on which an expert was sought, reconciling conflicting testimony of the victim and Melvin Maurice Mason[2] about where appellant was at the time of the robbery, was beyond the capability of jurors to understand without explanation by an "expert." See Ake 470 U.S. at 83, 105 S.Ct. at 1094,1096.

This record does not demonstrate that because appellant was not provided access to the expert[3] he sought, the trial was fundamentally unfair. Nor does the record before the trial court at the time of the ruling on appellant's motion demonstrate that the risk of error in the jury's verdict because of the absence of the expert appellant sought was so great that the trial court's denial of the motion was arbitrary or unreasonable, Brown v. State, 960 S.W.2d 772, 778 (Tex.App.--Dallas 1997, pet. ref'd), or, outside the zone of reasonable disagreement. See Benitez v. State, 5 S.W.3d 915, 918 (Tex.App.--Amarillo 1999, pet. ref'd). Thus, the trial court did not abuse its discretion in denying the motion to appoint an expert. Appellant's third issue is overruled.

---

[2]In his brief, appellant directs this Court's attention to evidence in the record that was admitted during appellant's trial. The reasonableness of the trial court's decision is reviewed as of the time it was made. See Rey, 897 S.W.2d 333 at n.9. At the time the trial court denied appellant's motion for expert assistance, the judge did not have before him the evidence that appellant refers to in his brief.

[3]This assumes, *arguendo*, that the "expert" testimony would be admissible. See Jordan v. State, 928 S.W.2d 550 (Tex.Crim.App. 1996).

12

Issue 4: Motion for Continuance

Appellant's fourth issue contends that the trial court abused its discretion in denying appellant's *pro se* motion for continuance to retain an expert witness at his own expense. The motion stated simply that "Defendant desires more time to hire an Eye-Witness Expert on identification."[4]

A motion for continuance is addressed to the discretion of the trial court, and the denial of such a motion is reversible only for an abuse of that discretion. Matamoros v. State, 901 S.W.2d 470, 478 (Tex.Crim.App. 1995); Smith v. State, 721 S.W.2d 844, 850 (Tex.Crim.App. 1986). The basis for a motion for continuance must be fully set forth in the motion. CCP art. 29.03. General or conclusory averments are not sufficient to support a motion for continuance. See Moore v. State, 504 S.W.2d 904, 905 (Tex.Crim.App. 1974).

Appellant did not allege any set of facts which would have supported his motion for continuance. The motion did not set out, for example, how much money was available to appellant to retain an expert witness, how much an expert witness was expected to cost, or how much time appellant anticipated he would require in order to obtain sufficient funds to retain the desired expert. The trial court's decision was not outside the zone of reasonable disagreement and thus was not an abuse of discretion. See Benitez, 5 S.W.3d at 918. Appellant's fourth issue is overruled.

---

[4]Although the motion stated that it was being submitted "by and through his attorney of record," the motion is signed and verified by appellant, not by appellant's attorney.

13

Issue 5: Motion for Directed Verdict

By his fifth issue, appellant argues that the trial court erred in overruling his motion for a directed verdict. Appellant argues that there was no evidence that he used or exhibited a deadly weapon as alleged, and that there was no evidence that he either solicited, encouraged, directed, aided or attempted to aid in the use or exhibition of a firearm. The State responds that the evidence is sufficient to support the conviction under the law of parties.

An issue complaining of the trial court's denial of a motion for a directed verdict is a challenge to the legal sufficiency of the evidence. See Williams v. State, 937 S.W.2d 479, 482 (Tex.Crim.App. 1996). In evaluating the legal sufficiency of the evidence, the appellate court views the evidence in the light most favorable to the verdict and determines whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979).

The law of parties provides that an accused may be held criminally liable for the acts of another when, with the requisite intent, he solicits, encourages, directs, aids, or attempts to aid another person in committing an offense. TEX. PENAL CODE ANN. § 7.02 (Vernon 1994). Mere presence during the commission of a crime is not sufficient to make one a party. Medina v. State, 7 S.W.3d 633, 641 (Tex.Crim.App. 1999). However, in determining whether an individual was party to an offense, the factfinder may look to events before, during, and after the commission of the offense. See Beardsley v. State, 738 S.W.2d 681,

14

684 (Tex.Crim.App. 1987); Hill v. State, 883 S.W.2d 765, 770 (Tex.App.--Amarillo 1994, pet. ref'd). Participation in a criminal offense may be inferred from the circumstances and need not be shown by direct evidence. See Beardsley, 738 S.W.2d at 684; Hill, 883 S.W.2d at 770. Furthermore, the evidence is sufficient to convict under the law of parties if it shows that the defendant was physically present during the commission of the offense and encouraged its commission by words, acts, or other agreement. See Ransom v. State, 920 S.W.2d 288, 302 (Tex.Crim.App. 1994) (op. on reh'g).

Appellant presented testimony that he was not in the store during the events in question. But, viewing Roblez's testimony in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that appellant was in the store, as well as the remaining essential elements of the offense. For example, the jury could have inferred that appellant was present, that language used by appellant proved that he knew a robbery was to occur and that a pistol was to be used in the robbery. Thus, under the law of parties, the evidence was legally sufficient to convict appellant. Id. Appellant's fifth issue is overruled.

### Issue 6: Admission of Pen Packet evidence

By his sixth issue, appellant argues that the trial court committed reversible error by admitting his "pen packet" into evidence during the punishment phase after appellant had pled "true" to the two enhancement paragraphs in the indictment. Appellant argues that because a plea of true to an enhancement allegation is sufficient evidence to support such an allegation, see Thomas v. State, 849 S.W.2d 405, 406 (Tex.App.--Fort Worth 1993, no

15

pet.), the prejudicial value of admitting the pen packet outweighs any probative value, and constitutes impermissible bolstering of the State's evidence.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. See Green v. State, 934 S.W.2d 92, 101-02 (Tex.Crim.App. 1996); Montgomery v. State, 810 S.W.2d 372, 390 (Tex.Crim.App. 1990) (op. on reh'g). A trial court abuses its discretion if its decision was arbitrary or unreasonable, Brown, 960 S.W.2d at 778, or, if, given the record and the applicable law, the decision fell outside the zone of reasonable disagreement. See Benitez, 5 S.W.3d at 918.

The trial judge has the authority to admit, during the punishment stage of trial, evidence of any matter the court deems relevant to sentencing, including but not limited to the defendant's prior criminal record, his reputation or character or an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405 of the Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant or for which the defendant could be held criminally responsible, regardless of whether the defendant has previously been charged with or convicted of the crime or act. CCP art. 37.07. In particular, a defendant's pen packet is admissible to support proof of prior convictions, even where the defendant's judicial admission, standing alone, is sufficient proof of the prior conviction in question. Beck v. State, 719 S.W.2d 205, 210 (Tex.Crim.App. 1986); Tyson v. State, 873 S.W.2d 53, 59 (Tex.App.--Tyler 1993, pet. ref'd).

16

Appellant's plea of true to the enhancement paragraphs of the indictment constituted a judicial admission of the facts alleged in the indictment. Nevertheless, appellant's pen packet was also admissible as proof of appellant's prior convictions, even where appellant had already judicially admitted the enhancement allegations. Beck, 719 S.W.2d at 210; Tyson, 873 S.W.2d at 59. It is within the trial court's discretion to determine if the probative value of the contents of appellant's pen packet substantially outweighed the risk of prejudice. See Rogers v. State, 991 S.W.2d 263, 267 (Tex.Crim.App. 1999); Thorn v. State, 961 S.W.2d 12, 19 (Tex.App.--Dallas 1996, pet. ref'd); Mayfield v. State, 803 S.W.2d 859, 862 (Tex.App.--Corpus Christi 1991, no pet.). We cannot say that this record required the trial court to exclude evidence which the legislature addressed as admissible. Therefore, the trial court did not abuse its discretion in admitting appellant's pen packet. Appellant's sixth issue is overruled.

Issue 7: Cumulation of sentences

By his seventh issue, appellant argues that the trial court erred in cumulating appellant's sentence with unproved prior convictions. Prior to sentencing, the State filed a motion to cumulate sentences, alleging that appellant had previously been convicted of aggravated robbery on December 17, 1999, in cause number 4144 of the 100th District Court, Childress County, Texas, and sentenced to 40 years confinement in the Texas Department of Criminal Justice - Institutional Division. The motion also alleged that the 40 year sentence imposed in cause number 4144 had been previously cumulated with ten year sentences imposed in the following cases: (1) burglary of a habitation, December 18, 1991, cause number 30,074-B, 181st District Court, Potter County, Texas; (2) aggravated

17

theft, December 18, 1991, cause number 30,075-B, 181st District Court, Potter, County, Texas; and (3) cause number 3548, May 28, 1991, 100th District Court, Childress County, Texas. The motion further alleged that appellant was the same individual who was previously convicted of all of the above offenses. Attached to the motion to cumulate was a certified copy of the 100th District Court's judgment in cause number 4144, and the affidavit of Darin W. Smith, the sheriff of Childress County, in which Smith averred that appellant is the same Gilbert Salinas that was convicted of aggravated robbery in cause number 2398 in the 100th District Court of Collingsworth County.[5]

Generally, when a defendant has been convicted in two or more cases not arising out of the same transaction, the trial judge has discretion in the second and subsequent convictions to order that the sentences run either consecutively or concurrently with the first or prior sentence. CCP art. 42.08(a). However, if a sentence is to be cumulated with a prior sentence from a different court, there must be evidence of the other conviction and proof that the defendant is the same person who was convicted in the other case. See Turner v. State, 733 S.W.2d 218, 223 (Tex.Crim.App. 1987).

Appellant does not challenge the sufficiency of the evidence demonstrating that appellant is the same person who was convicted of the prior offenses, nor does he challenge the sufficiency of the evidence regarding his prior conviction for cause number

---

[5]The trial court sustained appellant's hearsay objection to Smith's affidavit, and although the trial court denied appellant's request to strike the affidavit from the record, the trial judge stated that the affidavit would not be considered by the trial court for any purpose. Likewise, this Court does not consider Sheriff Smith's affidavit in the analysis of this appeal.

4144. Therefore, the issue is sufficiency of the evidence to prove the existence of the prior convictions in cause numbers 30,074-B and 30,075-B in the 181st District Court of Potter County, and cause number 3548 in the 100th District Court of Childress County.

The prosecutor testified during the sentencing hearing that he was present when appellant pled "true" to being the same individual who was convicted in cause number 30,074-B in the 181st District Court of Potter County. The prosecutor also requested the trial court to take judicial notice of all of the proceedings in cause number 2398 (the case at bar), and the judge agreed and noticed all of the proceedings. Because the trial court judicially noticed all of the proceedings in the case, the court had judicial notice of all of the exhibits introduced into evidence during appellant's trial, including the contents of appellant's pen packet. Contained in appellant's pen packet were certified copies of the judgments in cause numbers 30,074-B and 30,075-B in the 181st District Court of Potter County and an uncertified copy of the judgment in cause number 3548 in the 100th District Court of Childress County.

Appellant argues in his brief that a court generally cannot go to the record of another case for the purpose of considering testimony found there but not shown by the record in the case before it. Turner, 733 S.W.2d at 223. Appellant, however, is only partially correct. In Turner, the court held that an *appellate* court generally cannot go to the record of another case for the purpose of considering testimony found there but not shown in the record of the case before it. Id. A *trial* court, on the other hand, may judicially notice all of its own records. See Wilson v. State, 677 S.W.2d 518, 523 (Tex.Crim.App. 1984). A trial court is generally prohibited from taking judicial notice of records or documents that

19

might be on file in a different trial court. Id. Nevertheless, in the present case it was not necessary for the court to look beyond the record of the case currently being tried before it in order to find sufficient evidence of appellant's prior convictions. Once appellant's pen packet had been introduced into evidence, its contents, including the copies of the judgments for the convictions in question, were before the court in the record of the current case. Therefore, the trial court did not err in taking judicial notice of the pen packet. See id. The evidence was both legally and factually sufficient for the trial court to order that the sentence in the current case be cumulated with the sentences from the prior convictions. Appellant's seventh issue is overruled.

## Issue 8: Suggestive pre-trial photo identification

Appellant's eighth issue contends that the in-court eyewitness identification of appellant must be set aside because the pre-trial photo lineup which preceded the in-court identification was impermissibly suggestive. Appellant asserts that the photo lineup was impermissibly suggestive because the lineup contained photos only of Hispanic males.

As we have previously noted, a trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. Green, 934 S.W.2d at 101-02. A trial court abuses its discretion if its decision was arbitrary or unreasonable, or if the decision fell outside the zone of reasonable disagreement. Benitez, 5 S.W.3d at 918.

Identification evidence based upon a pre-trial photographic lineup is inadmissible if the display procedure is so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. See Simmons v. United States, 390 U.S. 377,

20

384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). While the procedures used during a photo lineup must not be impermissibly suggestive, the lineup should depict persons with sufficient similarity in appearance to give the witness a reasonable opportunity to identify the defendant and to establish that the identification is reliable. See Ford v. State, 794 S.W.2d 863, 866 (Tex.App.--El Paso 1990, pet. ref'd). The photographs used in the lineup should depict persons of the same race, general skin color, age, and height as the suspect. See, e.g., Barley v. State, 906 S.W.2d 27, 33-34 (Tex.Crim.App. 1995); Rivera v. State, 808 S.W.2d 80, 95 (Tex.Crim.App. 1991). Thus, the fact that all the photos in the lineup were of Hispanic males is not an indicator that the lineup procedures were impermissibly suggestive; rather, it is an indicator of the opposite proposition - that the lineup procedures were not impermissibly suggestive. The trial court did not abuse its discretion in allowing the in-court eyewitness identification of appellant. Appellant's eighth issue is overruled.

CONCLUSION

Having overruled appellant's eight issues, we affirm the trial court's judgment.


Phil Johnson
Justice


Do not publish.

21