Affirmed and Memorandum Opinion filed February 21, 2006









Affirmed and Memorandum Opinion filed February 21, 2006.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-05-00194-CR

_______________

 

CHARLES EDWARD TAPLIN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

______________________________________________________

 

On Appeal from the 179th District Court

Harris County, Texas

Trial Court Cause No. 1013220

______________________________________________________

 

M E M O R A N D
U M   O P I N I O N

Appellant, Charles Edward Taplin, appeals his conviction for
aggravated robbery.  In two issues,
appellant contends that (1) the evidence is factually insufficient to support
the jury verdict, and (2) he was denied effective assistance of counsel.  Because all dispositive issues are clearly
settled in law, we issue this memorandum opinion and affirm.  See Tex.
R. App. P. 47.4.   








I. 
Background

On February 7, 2003, the complainant went to a local tobacco
store to purchase cigars. When he returned to his truck to leave the store, he
noticed a man standing outside with a gun. 
Before the complainant was able to start the truck, the man opened the
truck door and held the gun to the complainant=s head.  The complainant attempted to get out of the
truck.  Another man joined the ensuing
struggle and grabbed the complainant=s arms to keep the complainant from
exiting the truck.  During the struggle,
the complainant fell to the ground and knocked the gun out of the first man=s hands.  The complainant picked up the gun and pointed
it towards the truck but did not fire. 
The two men drove away in the complainant=s truck and were followed by a car
driven by a man the complainant recognized as a former neighbor.

The complainant went back inside the store to call the
police.  He informed the police that his
house keys and the remote control to his home alarm system were on the
key-chain with his truck keys.  His name
and address were also on the insurance papers kept inside his truck.  The complainant called his house several
times to talk to his housekeeper, but no one answered the phone.  When the police arrived at the complainant=s house, they learned that the
complainant=s housekeeper had been assaulted and
his dog had been shot and killed. 

The housekeeper testified that while she was cleaning the
complainant=s house that morning, she heard the
security gate squeak and the door bell ring. 
A man she later identified as appellant kicked the door open.  As the door swung open, it hit the
housekeeper in the face.  Appellant
stepped inside and hit her in the head with the butt of a revolver.  The complainant=s dog jumped towards appellant, and
appellant shot the dog in the chest. As the dog backed away, appellant shot the
dog three more times.  Appellant asked
the housekeeper where the money was kept. 
When the housekeeper replied that she did not know what he was talking
about, appellant threw her on the ground and told her to get in a crouched
position.  The housekeeper remained on
the floor for the remainder of the robbery. 








A second man entered the house, but the housekeeper saw only
his leg as he entered the door and was not able to identify the man.  The second man went upstairs, and the
housekeeper heard him moving around and rummaging through furniture.  Appellant remained downstairs and ransacked
the first floor.  He kicked the
housekeeper in the ribs, dropped a punching bag on her head, and stomped on her
arm.  Appellant also asked the housekeeper
Aif there was any jewelry.@ 
The housekeeper replied that the only jewelry she knew of was her
wedding ring.  Appellant attempted to
pull the ring off her finger, but the ring became stuck and he was unsuccessful.  Appellant and his accomplice left the house
with two deer rifles and a carrying case containing some of the complainant=s movies. 

The housekeeper called her husband and locked herself in her
car until he arrived.  The police officer
that had been dispatched to the complainant=s house after the initial car-jacking
report arrived minutes later.  The
housekeeper gave a statement to the police, and was taken by ambulance to the
hospital for treatment.  A jury found
appellant guilty of aggravated robbery and assessed punishment at twenty years= imprisonment.

II. 
Factual Sufficiency

In his first issue, appellant contends that the evidence was
factually insufficient to support his conviction.  In reviewing the evidence for factual
sufficiency, we must view the evidence in a neutral light, and must set aside
the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.  Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996).  Evidence may be
factually insufficient if (1) the evidence supporting the verdict alone is too
weak to justify a finding of guilt beyond a reasonable doubt, or (2) the contrary
evidence is so strong that it would prevent a reasonable jury from finding
guilt beyond a reasonable doubt.  Zuniga
v. State, 144 S.W.3d 477, 484B85 (Tex. Crim. App. 2004).

 








A.        Evidence
Supporting the Verdict

Appellant argues that the evidence was factually insufficient
because no physical evidence was found linking appellant to the robberies and
the housekeeper was the only person able to identify appellant.  Appellant cites Johnson v. State in
which the Criminal Court of Appeals affirmed the reversal of the defendant=s conviction because the victim=s Aless-than-certain@ identification was not factually
sufficient evidence.  23 S.W.3d 1, 6
(Tex. Crim. App. 2000).  However,
the victim in Johnson was blindfolded during the attack and never had an
unobstructed view of her attacker.  See
id. at 5B6. 
The victim was also unable to identify the defendant in a photo line-up
and equivocated when identifying the defendant in court.  Id.  In contrast, the housekeeper testified that
she had an unobstructed view of appellant=s face for thirty to forty-five
seconds before he threw her to the ground. 
She also identified appellant in both black-and-white and color photo
line-ups, and testified at trial that she was Aabsolutely positive@ of her identification.  

Appellant nonetheless maintains that the housekeeper=s identification was not credible
evidence.  First, appellant notes that an
officer at the scene testified that the housekeeper told him that she had not
gotten a good look at the man who robbed her. 
However, on cross-examination, the officer admitted he previously told a
district attorney that he did not remember anything about the case, and testified
as he did because he felt pressured by the defense attorney.  In addition, the detective administrating the
photo line-ups testified that the housekeeper=s identification of appellant was
immediate and certain.  








Appellant next claims that the Aunorthodox@ procedure of showing the housekeeper
both black-and-white and color photo line-ups casts doubt on the reliability of
her identification.  See Cate v. State,
124 S.W.3d 922, 928B29 (Tex. App.CAmarillo 2004, pet. ref=d) (holding that the reliability of a
witness= in-court identification was relevant
as related to the weight of the evidence in a factual sufficiency review when
appellant did not file a motion to suppress or object to the identification).  When a witness has not previously
identified the defendant, the repeated inclusion of the defendant=s photograph in different line-ups
can be a suggestive procedure.  See
Cantu v. State, 738 S.W.2d 249, 251B52 (Tex. Crim. App. 1987).  The reoccurrence of one particular person may
suggest to the witness that the police believe that person is the culprit.  Id. at 252.  However, here, the housekeeper identified
appellant in the first line-up that included his photograph.[1]  Therefore, because she had previously
identified appellant, the subsequent inclusion of appellant=s photograph in a color line-up was
not suggestive and did not render her identification unreliable.  See, e.g., Benitez v. State, 5 S.W.3d
915, 921B22 (Tex. App.CAmarillo 1999, pet. ref=d) (finding multiple line-ups
containing different photographs of defendant not suggestive procedure).

The positive identification of the defendant as the
perpetrator is factually sufficient to support a conviction if the jury
reasonably believes the witness.  See
Goodman v. State, 66 S.W.3d 283, 286B87 (Tex. Crim. App. 2001); Cate,
124 S.W.3d at 928B29.  Therefore, we
conclude that the State=s evidence standing alone was not too weak to justify a
finding of guilt beyond a reasonable doubt. 


B.        Evidence
Contrary to the Verdict








Appellant further contends that the housekeeper=s testimony was outweighed by
contrary evidence that appellant had an alibi for the day of the robbery.  Appellant=s girlfriend testified that appellant
was at home the morning of the robbery until he left for work, and his employer
testified that appellant was at work from 3:00 p.m. to midnight.  Appellant=s mother also testified that she did
not see him the morning of the robbery with his cousin, the alleged
accomplice.  However, a verdict is not
clearly wrong and unjust merely because the jury resolved conflicting evidence
in favor of the State.  Cain v. State,
958 S.W.2d 404, 410 (Tex. Crim. App. 1997). 
The jury is the sole judge of the weight and credibility of witness
testimony, and was free to reasonably believe or disbelieve all or any part of
the testimony from the alibi witnesses.  See
Ortiz v. State, 93 S.W.3d 79, 88 (Tex. Crim. App. 2002); Jones v. State,
984 S.W.2d 254, 258 (Tex. Crim. App. 1998). 
Here, we find that the jury could have reasonably disbelieved appellant=s alibi defense.  See Vasquez v. State, 67 S.W.3d
229, 236B39 (Tex. Crim. App. 2002) (finding
jury could have reasonably disbelieved alibi testimony of appellant=s girlfriend in factual sufficiency
review); Cate, 124 S.W.3d at 928B29 (finding evidence factually
sufficient based on complainant=s identification despite the alibi testimony of defendant=s employer and mother).  Further, with respect to appellant=s employer, even if the jury believed
the alibi testimony, they could have nonetheless concluded that appellant
committed the crime.  The police arrived
at the complainant=s house around 1:15 p.m., thirty to forty minutes after the
crime occurred.  Appellant=s work shift began at 3:00 p.m.  Thus, there was sufficient time for appellant
to commit the crime that morning and arrive for work that afternoon.  See Vasquez, 67 S.W.3d at 237B38 (noting that even if the jury
believed alibi testimony, it did not preclude the possibility that appellant
committed the crime).  Therefore, we also
conclude that the contrary evidence was not so strong that it would prevent a
reasonable jury from finding guilt beyond a reasonable doubt. 

Because we find the evidence factually sufficient to support
the jury verdict, appellant=s first issue is overruled. 


III. 
Ineffective Assistance of Counsel 








In his second issue, appellant contends that he was denied
effective assistance of counsel when his attorney failed to properly offer into
evidence a record of appellant=s working hours.  At
trial, appellant=s supervisor testified that appellant worked from three in
the afternoon to twelve o=clock midnight on the day of the robbery.  However, he had not worked the same shift,
and did not have personal knowledge of the time period appellant had been at
work that day.  Rather, his testimony was
based on the records a secretary at the company had produced in response to a
request from the police.  On
cross-examination, the prosecutor asked whether the supervisor had records to
verify his statement.  The supervisor did
not have the record, but on redirect-examination, the defense offered into
evidence a printed time card of appellant=s working hours the day of the
robbery.  The State objected that the
record was hearsay and the predicate for a business record had not been
made.  The objection was sustained.  Appellant=s attorney did not attempt to lay the
appropriate predicate or offer the exhibit again.

In evaluating an ineffective-assistance-of-counsel claim, we
apply a two prong test. Strickland v. Washington, 466 U.S. 668, 687
(1984); Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App.
1986).  First, we must determine whether
the attorney=s performance was deficient; i.e.,
that the performance fell below an objective standard of reasonableness under
the prevailing professional norms.  Strickland,
466 U.S. at 687B88.  If we find the
attorney=s performance deficient under the first
prong, then we must determine whether the deficient performance prejudiced the
defense to such a degree that the defendant was deprived of a fair trial.  Id. at 687.  In other words, appellant must show a
reasonable probability that, but for his counsel=s errors, the result of the
proceeding would have been different.  Id.
at 694.

Appellant has failed to meet his burden under Strickland.  There is a strong presumption that an
attorney=s performance falls within the range
of reasonable assistance.  Id. at
689.  An isolated incident of alleged
miscalculation does not necessarily render counsel ineffective, especially Awhen the record provides no
discernible explanation of the motivation behind counsel=s actions.@ 
Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).  Here, appellant did not file a motion for new
trial, and the record is void of any information indicating why appellant=s counsel abandoned his attempt to
lay the proper predicate for admitting the time card.  Therefore, appellant has failed to rebut the
presumption that his attorney=s conduct fell within the wide range of reasonably
professional assistance.  See id. at
814.








Moreover, appellant has not shown a reasonable probability
that the outcome of the trial would have been different had the time card been
admitted.  Appellant=s supervisor testified as to the
content of the time card at trial, and the subsequent admission of the time
card into evidence would have been cumulative. 
See Madrigal Rodriguez v. State, 749 S.W.2d 576, 581 (Tex. App.CCorpus Christi 1988, pet. ref=d) (finding appellant failed to meet
the second Strickland prong when trial counsel did not develop proper
predicate to introduce photographs into evidence when the defendant testified
about the subject of photographs in detail). 
Moreover, the robbery occurred in the late morning hours.  Thus, the introduction into evidence of a
time card proving that appellant was at work from 3:00 p.m. to midnight would
not preclude a jury from concluding that appellant committed the offense.
Because appellant has failed to meet both prongs of Strickland,
appellant=s second issue is overruled.  

Accordingly, the judgment of the trial court is affirmed.

 

/s/        Charles
W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed February 21, 2006.

Panel consists of Justices Hudson,
Frost, and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  The first
photographic line-up the housekeeper was shown did not include appellant.  However, appellant=s photograph was included in two subsequent line-ups
after he became a suspect.  Appellant=s argument on appeal is based solely on the two
line-ups that included his photograph.