Opinion issued
June 30, 2011



In
The

Court of
Appeals

For
The

First District
of Texas

————————————

NO. 01-10-00394-CR

———————————

CRUZ
CRISOFORO CHAVEZ, Appellant

V.

THE STATE OF TEXAS, Appellee



 



 

On Appeal from the 263rd District Court

Harris County, Texas



Trial
Court Case No. 1180719

 



 

 

 

 

 

 

MEMORANDUM
OPINION

          The
jury found appellant, Cruz Crisoforo Chavez, guilty of the offense of murder.[1]  The jury assessed punishment at 25 years in
prison.  Appellant challenges the
judgment of conviction in three issues.

We affirm. 

Background

          A
grand jury indicted appellant for the murder of the complainant, Jose
Lopez.  The indictment alleged that
appellant had caused the complainant’s death by stabbing him with a knife.  More particularly, it alleged that appellant
either (1) had intentionally and knowingly caused the complainant’s death or
(2) had intended to cause serious bodily injury to the complainant and had
caused his death by knowingly committing an act clearly dangerous to human
life, namely, stabbing the complainant with a knife.  

At trial, the State and the
defense presented different versions of the events surrounding the complainant’s
death.  The State presented evidence showing
that appellant had intentionally stabbed the complainant because the
complainant owed appellant’s wife money. 
The defense presented evidence that appellant was not the person who
stabbed the complainant.  

The State’s evidence showed
that Jose Alvarado, the complainant’s roommate and appellant’s friend, saw
appellant and the complainant fighting in a common area of the apartment
complex where all three men lived. 
Alvarado heard appellant tell the complainant that he wanted to kill
him.  Alvarado saw the complainant
backing away from appellant with his hands in the air, and saw appellant advancing
toward the complainant.  Alvarado also
saw that appellant had a large kitchen knife in his hand.  

When Alvarado intervened,
appellant warned him to stay out of it. 
Appellant threatened to stab Alvarado and swiped at him with the
knife.  Alvarado then ran behind a car
that was about 10 feet away.  Appellant
pursued the complainant, who continued to hold his hands up in the air.  The complainant was leaning against a car
when appellant stabbed him.  Appellant
then ran to his nearby apartment.  

Maria Mediata was also a
witness at the scene.  While she was
driving through the apartment complex parking lot, Mediata and Alvarado, who
was a passenger in her car, noticed appellant and the complainant struggling
with each other.  Mediata stopped the car
to let Alvarado out to allow him to intervene in the altercation.  Mediata testified that she heard appellant
yelling “bad words” at the complainant. 
She saw that appellant was holding onto the complainant, who was trying
to pull away from appellant.  

After parking her car,
Mediata returned to the scene and saw that the complainant was injured and
bleeding.  Mediata also saw appellant running
from the scene carrying a knife.  Mediata
heard appellant cussing.  She also heard
him say that no one should try to get close to him or “they also would be
fucked up.”  

Mediata and Alvarado attempted
to aid the complainant, who was bleeding profusely from a stab wound in his
side.  The complainant told Mediata that
appellant was upset because the complainant owed appellant’s wife $100 for
lunches that she had prepared for the complainant.  The complainant was taken to the hospital
where he died the next morning.  

Police recovered a knife
from the front seat of appellant’s truck and another knife from the kitchen
sink of appellant’s apartment.  Appellant
voluntarily surrendered to the police several days later. 

At trial, an assistant
medical examiner testified that the complainant’s cause of death was a five and
one-half-inch stab wound to his torso.  The
medical examiner testified that the stabbing had also fractured appellant’s
rib, indicating that significant force had been used to make the wound. 

Appellant testified in his
own defense at trial.  He provided a
different version of the events from that provided by Alvarado and Mediata.  Appellant testified that on the night in
question, he was working on his car using a small knife to strip the battery
cable.  He stated that the complainant
approached him from behind and threatened him with a knife.  At first, appellant did not realize that it
was the complainant; rather, he thought that it was a stranger attempting to
rob him.  Appellant stated that he had
never had any problem with the complainant in the past.  Appellant testified that the complainant did
not owe appellant’s wife money.  

Appellant testified that the
complainant lunged at him with the knife a couple of times.  According to appellant, the complainant cut
himself on the arm with his own knife.  Appellant
testified that he feared for his life.  

Appellant testified that
Jose Alvarado and Maria Mediata arrived at the scene in a truck with another
man.  They told appellant that they were
trying to stop the altercation.  Appellant
stated that “they took [the complainant]” with them in the truck.  Appellant testified that he did not stab the
complainant.  

The jury found appellant
guilty of the offense of murder and assessed punishment at 25 years in
prison.  Appellant now appeals the
judgment of conviction in three issues.

Spousal Privilege

In his first issue,
appellant contends it was error for the trial court to permit the State to call
his wife to the stand and to require that she invoke her spousal privilege in
the jury’s presence.  

 

A.      Relevant Portions of the Record 

Before the State called
Maria Acosta as a witness, defense counsel requested the trial court to conduct
an “in camera hearing” to permit Acosta to assert her spousal privilege not to
testify against appellant and to allow the parties to question Acosta regarding
issues related to her assertion of that privilege.  The trial court denied the request.  The trial court informed the parties that the
State could call Acosta as a witness, and, if she asserted her spousal
privilege, then the trial court would conduct a hearing outside the presence of
the jury to allow the parties to ask questions pertinent to the privilege.   

          When
questioned by the State, Acosta acknowledged that she had told an investigating
police officer that she was not married to appellant.  When asked whether she currently claimed that
appellant is her husband, Acosta responded, “In my heart, he is my husband.”  The State then asked whether Acosta knew that
if she claimed that appellant is her husband, she may not have to testify.  Acosta stated, “I don’t want to testify
against him because I love him.”  The
prosecutor clarified, “That’s not my question. 
My question is have you been informed if you claim he’s your husband,
you don’t have to testify about your knowledge of the events surrounding this
case?”  At that point, the defense made a
relevancy objection, which the trial court overruled.  Acosta then answered the question indicating
that she had not been informed of the spousal privilege.  

          The
State proceeded to question Acosta regarding whether appellant had been
drinking beer on the day of the offense. 
Acosta indicated that appellant had been drinking beer with his friends
at the apartment complex.  After Acosta
had answered 15 questions on this topic, defense objected, stated that Acosta
had claimed the spousal privilege and requested that the questioning stop.  

          The
trial court stopped the questioning and conducted a hearing outside the
presence of the jury.  Defense counsel
conducted a voir dire examination of Acosta to establish that she was appellant’s
common law wife.  Counsel elicited
testimony from Acosta in which she indicated that she was asserting her spousal
privilege.  The trial court noted on the
record that Acosta had asserted the privilege. 
At that point, Acosta left the witness stand.  The jury was brought in and the State
rested.  No mention was made to the jury
regarding Acosta’s departure from the witness stand.  

B.      Pertinent Legal Principles 

Rule of Evidence 504(b)(1)
provides that the spouse of an accused has a privilege not to be called as a
witness for the State.  Tex. R. Evid. 504(b)(1).  This is not an absolute privilege; it must be
invoked by the defendant’s spouse.  See id.; Benitez v. State, 5 S.W.3d 915, 918 (Tex. App.—Amarillo 1999, pet ref’d); see also Johnson v. State, 803 S.W.2d
272, 281 (Tex. Crim. App. 1990), overruled
on other grounds, Heitman v. State,
815 S.W.2d 681 (Tex. Crim. App. 1991).  Claims
of privilege generally should be made without the jury’s knowledge.  See Tex. R. Evid. 513(b).  The spouse’s invocation of privilege in front
of the jury, without more, almost necessarily compels the jury to draw an
inference adverse to the defendant.  Johnson, 803 S.W.2d at 282; see also Benitez, 5 S.W.3d at 920.  However, it is not automatic error if the jury
divines what occurred.  Benitez, 5 S.W.3d at 919.  One court has held, “[I]t is the jury’s
perception of the situation, coupled with the knowledge by the prosecutor that
the claim would likely be invoked, which creates the error.”  Id.  

Any error by the trial court
in allowing the State to call appellant’s spouse as a witness and force the
invocation of privilege in front of the jury is subject to a harm analysis.  See Johnson,
803 S.W.2d at 283 (conducting harm analysis under former Rule of Appellate
Procedure 81(b)(2)).  Because such error
does not implicate the constitutional rights of an appellant, we apply Rule of
Appellate Procedure 44.2(b) to determine whether the error affected the appellant’s
substantial rights.  See Tex. R. App. P.
44.2(b).  A substantial right is affected
when the error has a substantial and injurious effect or influence in
determining the jury’s verdict.  See King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  A substantial right is not affected “if the
appellate court, after examining the record as a whole, has fair assurance that
the error did not influence the jury, or had but a slight effect.”  Motilla
v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); see Casey v. State, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007).  Stated differently, if we have “a grave
doubt” that the result was free from the substantial influence of the error, we
must treat the error accordingly.  Burnett v. State, 88 S.W.3d 633, 637–38 (Tex. Crim. App. 2002).  “Grave doubt” means that “in the judge’s mind,
the matter is so evenly balanced that he feels himself in virtual equipoise as
to the harmlessness of the error.”  Id. 

In assessing the likelihood
that a jury’s decision was adversely affected by the errors, we consider
everything in the record, including any testimony or physical evidence
admitted, the nature of the evidence supporting the verdict, the character of
the alleged error and how it might be considered in connection with other
evidence.  Motilla, 78 S.W.3d at 355.  We
may also consider statements made during voir dire, jury instructions, the
State’s theory, any defensive theories, closing argument, and whether the State
emphasized the errors.  Id. at 355–56.

B.      Harm Analysis

          On
appeal, appellant complains of the trial court’s overruling of his request to conduct
a hearing outside the presence of the jury regarding spousal privilege, and the
trial court’s requiring Acosta to assert her privilege in front of the
jury.  Appellant contends that the trial
court’s actions likely resulted in the jury making an adverse inference against
him, namely, an inference that Acosta’s testimony would have been detrimental to
him.  

Even if we assume that the
trial court erred as asserted by appellant, we conclude that the error was
harmless because it did not affect appellant’s substantial rights.  See Tex. R. App. P. 44.2(b).  After examining the record of appellant’s trial
as a whole, we have fair assurance that the error did not have a substantial
and injurious effect or influence in determining the jury’s verdict.  First, Alvarado and Mediata each provided
detailed eyewitness testimony that supported the jury’s guilty finding.  Their testimony placed appellant at the scene
with a large knife in his hand, the size of that which the assistant medical
examiner testified was used to kill the complainant.  Alvarado and Mediata also testified that
appellant was the aggressor in the altercation with the complainant, and they heard
appellant make threatening and incriminating statements at the scene.  Although Alvarado testified that he could not
see the exact location on the complainant’s body where appellant stabbed the
complainant, Alvarado responded affirmatively when asked whether he saw
appellant “using the knife to stab [the complainant].”  

Appellant denied being the
aggressor, and denied stabbing the complainant, but admitted that he and the
complainant had engaged in a physical altercation on the night in question.  Appellant also admitted to possessing a knife
during the altercation, albeit a small knife. 


When they were called to the
scene on the night of the complainant’s death, the police recovered a butcher
knife with a seven inch blade from the kitchen sink of appellant’s
apartment.  The knife tested negative for
blood, but both Alvarado and Mediata testified that it looked similar to the
knife that appellant wielded when attacking the complainant.  The assistant medical examiner testified that
the knife recovered was consistent with the type of knife that inflicted the
complainant’s fatal wound.  

Moreover, the jury heard
Acosta state that she did not want to testify against appellant because she
loved him.  The jury did not hear Acosta
specifically say that she was asserting her spousal privilege not to testify.  Defense counsel mentioned the privilege in
front of the jury when he objected.  At
that point, the jury had already heard Acosta provide testimony detrimental to
appellant, namely, that appellant had been drinking beer on the night of the
offense.  No evidence was presented by
either side that Acosta was present at the scene of the stabbing or otherwise
had direct knowledge of the offense.  In
addition, the State did not draw attention to either Acosta’s assertion of the
privilege or the fact that the defense did not call Acosta as a witness.  Cf. Tex. R. Evid. 504(b)(2) (“Failure by an accused to call
the accused’s spouse as a witness, where other evidence indicates that the
spouse could testify to relevant matters, is a proper subject of comment by
counsel.”).  

In conclusion, after examining
the record as a whole, we have fair assurance that the complained-of error did
not have a substantial and injurious effect or influence in determining the
jury’s verdict, or had but a slight effect.  Casey,
215 S.W.3d at 885.  Therefore, any error
by the trial court in denying appellant’s request to conduct a hearing
regarding spousal privilege outside the presence of the jury and creating a
situation in which the privilege would be asserted in front of the jury was
harmless.  

We overrule appellant’s first
issue.

Lesser-Included Offenses

In his second issue,
appellant contends that the trial court erred when it denied his request for
lesser-included offense instructions for the offenses of manslaughter and
criminally negligent homicide.  

A.      Legal Principles

We employ a two-part test to
determine whether a trial court should have given a lesser-included offense
instruction requested by the defendant.  See Guzman v. State, 188 S.W.3d 185, 188
(Tex. Crim. App. 2006); Salinas v. State,
163 S.W.3d 734, 741 (Tex. Crim. App. 2005).  In the first part, we determine whether an
offense is a lesser-included offense of the alleged offense.  Hall v.
State, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007); Salinas, 163 S.W.3d at 741. The lesser-included offense must be
included within the proof necessary to establish the offense charged.  See Rousseau
v. State, 855 S.W.2d 666, 672–75 (Tex. Crim. App. 1993).

The second step is to
determine if there is some evidence that would permit a rational jury to find
that the defendant is guilty of the lesser offense but not guilty of the
greater.  Hall, 225 S.W.3d at 536; Salinas,
163 S.W.3d at 741.  Anything more than a
scintilla of evidence may be sufficient to entitle a defendant to a charge on
the lesser offense.  Hall, 225 S.W.3d at 536.  “[I]t
is not enough that the jury may disbelieve crucial evidence pertaining to the
greater offense, but rather, there must be some evidence directly germane to
the lesser-included offense for the finder of fact to consider before an
instruction on a lesser-included offense is warranted.”  Hampton
v. State, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003).  

We review all evidence
presented at trial to make this determination.  Rousseau,
855 S.W.2d at 673.  If the evidence
raises the issue of a lesser-included offense, a jury charge must be given
based on that evidence, “whether produced by the State or the defendant and
whether it be strong, weak, unimpeached, or contradicted.”  Id.
at 672 (quoting Bell v. State, 693
S.W.2d 434, 442 (Tex. Crim. App. 1985)).

B.      Analysis

The State does not contest
that, as charged in this case, manslaughter and criminally negligent homicide
are lesser included offenses of murder.  See Cardenas v. State, 30 S.W.3d 384,
392–93 (Tex. Crim. App. 2000)
(noting that manslaughter and criminally negligent homicide are lesser included
offenses of capital murder).  Therefore,
we must determine whether there is some evidence in the record that would
permit the jury to find that if appellant is guilty, he is guilty only of
manslaughter or criminally negligent homicide.  In other words, there must be some evidence
from which a jury could rationally acquit appellant of the greater offense of
murder while convicting him of the lesser included offenses of manslaughter or
criminally negligent homicide.  See Mathis v. State, 67 S.W.3d 918, 925
(Tex. Crim. App. 2002).  To make such a
finding, the evidence must establish the lesser included offense as a valid
rational alternative to the charged offense.  Hall,
225 S.W.3d at 536.

The essential difference
between murder and either manslaughter or criminally negligent homicide is the
culpable mental state required for each offense.  See Ross
v. State, 861 S.W.2d 870, 875 (Tex. Crim. App. 1992) (holding involuntary
manslaughter lesser included offense of murder); Thomas v. State, 699 S.W.2d 845, 849 (Tex. Crim. App. 1985) (holding
criminally negligent homicide lesser included offense of murder).  A person is guilty of murder (1) if he
intentionally or knowingly causes the death of an individual or (2) if he
intended to cause serious bodily injury and commits an act clearly dangerous to
human life.[2]  Tex.
Penal Code Ann. § 19.02(b) (Vernon 2003).  In contrast, manslaughter is defined as
recklessly causing the death of an individual, id. § 19.04(a) (Vernon 2003),[3] while criminally negligent
homicide requires a person to cause the death of an individual by criminal
negligence.[4]  Id.
§ 19.05(a) (Vernon 2003).  Accordingly, appellant
was entitled to an instruction on manslaughter if there is some evidence from
which a rational jury could find that he only consciously disregarded the
substantial and unjustifiable risk that his conduct would cause the
complainant’s death.  Appellant was
entitled to an instruction on criminally negligent homicide if there was some
evidence from which a rational jury could find that he only should have been
aware of a substantial and unjustifiable risk that the complainant’s death
would occur.

To support his assertion
that he was entitled to the lesser-included instructions, appellant cites the
following argument he presented to the trial court:

I would like the lesser included offense of both
manslaughter and criminally negligent homicide to be included into the charge.

 

I have the standard, basically, boilerplate
charge that we use for those two lesser options here in Harris County available
for the court reporter or for the record.

 

Judge, I think there is evidence
when we consider Maria Mediata talked about a struggle, at some point one of
the combatants had a knife.  There was
talk or testimony from Jose Alvarado about close proximity and nobody has
testified that they saw [appellant] intentionally or knowingly stab the decedent
Jose Lopez with a knife.  And, therefore,
Judge, I think a Jury might find him not guilty of murder and should have the option
of considering whether they want to find him guilty of manslaughter for causing
manslaughter, basically, killing him without the intent to kill him or without
even the intent to commit serious bodily injury by committing an act clearly
dangerous to human life, the other possible way to convict him of murder.

 

          I think
the Jury might find him not guilty of both of those things and possibly
manslaughter as sort of an accident in the struggle.  And, again, Judge, I have a proposed charge
to include on that.

 

By an extension of that
argument, Judge, if they do not feel that whatever conduct out there, whatever
careless contact out there might have actually constituted manslaughter, then
they could·have the option if they thought [appellant’s] conduct rose to the
level of criminal negligence.

 

The culpable mental state for
murder refers to the result of the conduct—a person’s death—not to the nature
of that conduct.  See Cook v. State, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994).  As
a result, there must be some affirmative evidence, from some source, that at
the moment appellant stabbed the complainant, he did not intend his death or
know that it was reasonably certain to occur. 
See Mays v. State, 318 S.W.3d
368, 387 (Tex. Crim. App. 2010); see also
Hampton v. State, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003) (holding that before
one is entitled to an instruction on a lesser-included offense, there must be
“affirmative” evidence “directly germane” to the existence of the
lesser-included offense).

The evidence appellant points to
does not affirmatively show that he was either reckless or negligent about the
likelihood that a death would occur at the moment he stabbed the complainant.  In the trial court, appellant pointed to evidence
that Alvarado and Mediata saw appellant and the complainant struggling.  Appellant posited that the struggle led to an
accidental stabbing.  However, there is
no affirmative evidence to support this theory. 
To the contrary, Alvarado and Mediata each testified that appellant was
the aggressor and that the complainant was attempting to back away from
appellant during the altercation.  In
addition, Alvarado testified that he heard appellant tell the complainant that
he wanted to kill him.  Appellant was wielding
a large kitchen knife.  When Alvarado
tried to intercede, appellant swiped at him with the knife.  Alvarado also testified that appellant
pursued the complainant, who had his hands in the air.  Thereafter, appellant stabbed the
complainant.  

When he testified, appellant
did not state that the stabbing was accidental. 
Instead, appellant denied stabbing or hurting the complainant altogether.  Appellant stated that Alvarado and Mediata
had taken the complainant, who was still alive, with them in a truck.  

          We conclude
that there is no evidence in the record showing that, if he is guilty,
appellant is guilty only of the lesser-included offense of manslaughter
or criminally negligent homicide.  We hold that the trial court properly denied
appellant’s request for the lesser-included offense instructions.

          We overrule
appellant’s second issue.

Closing Argument

          In his third
issue, appellant contends that the trial court erred in overruling his
objection to the State’s argument.

Proper jury argument falls within
one of the following categories: (1) summation of the evidence, (2) reasonable
deduction from the evidence, (3) response to argument of opposing counsel, and
(4) plea for law enforcement.  Davis v. State, 329 S.W.3d 798, 821
(Tex. Crim. App. 2010).  Here, appellant
complains of the State’s closing argument contained in the following discourse:

[Prosecutor:] 
[Defense counsel] also wants you to believe that the fact that those two
witnesses [Alvarado and Mediata] and the defendant had the time [of the
stabbing] around 10:00 o’clock means that there is something foul about their
testimony.  Well, there wasn’t. Just
means they were wrong about the time. 
You heard the testimony from the medical examiner.  There is no way that [the complainant] would
have survived two hours bleeding the way he was.  You heard the doctor testify that without
immediate medical attention he would have expired.

 

[Defense counsel:] 
Judge, that’s a mischaracterization of the evidence.  He actually lived 9 hours.

 

[Prosecutor:]  Without medical attention, Your Honor.

 

The Court: 
Overruled.

 

Contrary to appellant’s contention,
the foregoing argument by the State was proper. 
It was offered in response to the appellant’s closing argument in which
he assailed Alvarado’s and Mediata’s credibility.  They had testified that the stabbing occurred
around 10:30 p.m., but other evidence showed that the police had been called
around midnight.  When it made the
complained-of remark, the State was highlighting that Alvarado and Mediata had
simply been mistaken about the time of the stabbing.  

          The complained-of
statement by the prosecutor was also a reasonable deduction from the assistant
medical examiner’s testimony.  The
assistant medical examiner testified that a person who had sustained a knife wound,
such as that sustained by the complainant, might die “in a matter of 10
minutes.”  The doctor stated that the
rate of death depended on how many blood vessels were severed and whether there
was immediate access to medical therapy. 
The record shows that the complainant received medical treatment
following the stabbing.  The assistant
medical examiner also testified that the complainant had extensive blood loss
and that his liver had been lacerated.  Thus,
when she made the statement, the prosecutor was reasonably deducing from the
doctor’s testimony that the complainant had received his medical treatment
within two hours of being stabbed.  

          Appellant
also complains of another remark by the State made in response to an argument by
the defense.  The defense argued that
appellant’s post-incident conduct indicated that he did not kill the
complainant.  The defense pointed out
that, after the incident, appellant did not flee to Mexico.  The State responded that there might be other
reasons that appellant did not flee, such as the fact that appellant’s wife and
child live in Houston and “How about the fact that he didn’t have any money on
him at that point?  Didn’t have any
identification.”  

          Appellant
objected on the ground that “the fact” that appellant did not have money or
identification was not in evidence.  The
trial court overruled the objection.  

Appellant is correct that no
evidence was offered regarding these facts. 
Nonetheless, even if we assume that it was error for the trial court to
overrule the objection, any error was harmless. 
 

Improper-argument error is
non-constitutional error.  Brown v. State, 270 S.W.3d 564, 572
(Tex. Crim. App. 2008).  Non-constitutional
error that does not affect substantial rights must be disregarded.  Id.;
see Tex.
R. App. P. 44.2(b).  To determine whether appellant’s substantial
rights were affected by improper argument, we balance the following factors:
(1) the severity of the misconduct (the magnitude of the prejudicial effect of
the prosecutor’s comment), (2) any curative measures taken (the effect of any
cautionary instruction by the trial court), and (3) the certainty of conviction
absent the misconduct (the strength of the evidence supporting the conviction).
 Mosely
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

          We first
consider the severity of misconduct.  The
Court of Criminal Appeals has equated the “severity of the misconduct” with the
prejudicial effect of the prosecutor’s remarks.  Id.  When evaluating the severity of the
misconduct, we must assess whether the jury argument is extreme or manifestly
improper by examining the entire record of final argument to determine if there
was a willful and calculated effort on the part of the State to deprive
appellant of a fair and impartial trial.  Brown,
270 S.W.3d at 573.  

The complained-of argument was made
in conjunction with remarks that were supported by the evidence; that is, the
State also argued that appellant had reason not to flee because his wife and
child lived in Houston.  These facts were
supported by testimony admitted at trial. 
When read in context, the complained-of remarks appear to be inadvertent
and innocuous.  Moreover, the record
reflects that the complained-of argument was only a small portion of the State’s
entire jury argument.  The State instead
emphasized the incredibility of appellant’s testimony, the credibility of
Alvarado’s and Mediata’s testimony, and the forensic evidence. After reviewing
the State’s closing argument as a whole, we conclude that there was no willful
and calculated effort on the part of the State to deprive appellant of a fair
and impartial trial.  Nor can we conclude
that appellant was prejudiced by the remark. 


Although there were no curative
measures, such as an instruction to disregard, the objectionable statement was
an isolated statement, and the prosecutor moved on after the objection and did
not mention it again.  Moreover, given
the evidence as a whole, including the eye-witness testimony, the knife
recovered from appellant’s kitchen sink, and the forensic evidence, the
certainty of the conviction was unaffected by the isolated remark by the State.  The pertinent decision that the jury had to
make in this case was whether to believe Alvarado and Mediata or whether to
believe appellant.  The complained-of
comment by the prosecutor that appellant did not flee because he lacked money
and identification had little, if any, bearing on the jury’s credibility assessments.  

After reviewing the record as a
whole, we conclude that appellant’s substantial rights were not affected by the
complained of error.  See Tex. R. App. P. 44.2(b).  Therefore, assuming the trial court
erred by overruling appellant’s objection, we hold that the error was harmless.

          We overrule
appellant’s third issue.  

 

 

 

Conclusion

          We
affirm the judgment of the trial court.

 

 

Laura Carter Higley

                                                                   Justice


 

Panel consists of
Justices Jennings, Higley, and Kerrigan.[5]

 

Do not
publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. § 19.02(b) (Vernon 2003).





[2]           A person acts intentionally with
respect to the nature of his conduct or to a result of his conduct when it is
his conscious objective or desire to engage in the conduct or cause the result.
 Tex.
Penal Code Ann. § 6.03(a) (Vernon 2003).  A person acts knowingly with respect to a
result of his conduct when he is aware that his conduct is reasonably certain
to cause the result.  Id. § 6.03(b).

 





[3]
       A person acts recklessly with respect to
circumstances surrounding his conduct or the result of his conduct when he is
aware of but consciously disregards a substantial and unjustifiable risk that
the circumstances exist or the result will occur.  Id.
§ 6.03(c).

 





[4]
       A person acts with criminal negligence with respect
to the circumstances surrounding his conduct or the result of his conduct when
he ought to be aware of a substantial and unjustifiable risk that the
circumstances exist or the result will occur.  Id.
§ 6.03(d).

 





[5]           The Honorable Patricia Kerrigan, Judge
of the 190th District Court of Harris County, participating by assignment.